FILED
08 FEB 14 PM 3:29
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: CP DEPUTY

ALEXANDER B. CVITAN (CSB 81746) and
J. DAVID SACKMAN (CSB 106703), and
STEVEN T. NUTTER (CSB 67008), Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860
Facsimile: (213) 386-5583
email: jds@rac-law.com

Attorneys for Plaintiff

ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOHIL KARIMY,

Plaintiff,

vs.

ASSOCIATED GENERAL CONTRACTORS OF AMERICA – SAN DIEGO CHAPTER, INC., APPRENTICESHIP & TRAINING TRUST FUND,

Defendants.

NO. '08 CV 0297 L CAB

COMPLAINT FOR VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII, THE FAIR LABOR STANDARDS ACT AND RELATED STATE CLAIMS [42 U.S.C. §§ 1981, 2002e-2, 29 U.S.C. § 216(b)]

DEMAND FOR JURY TRIAL

[JURISDICTION AND VENUE]

1. This Court has original subject matter jurisdiction over this action pursuant to 42 U.S.C. §§ 1981 and 2002e-5(f), for the claims of employment discrimination, and under 29 U.S.C. § 216(b) for the failure to pay overtime. This Court has supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367(a) as arising from the same core facts, namely for the same acts of discharging plaintiff and failing to pay overtime. Venue is proper in district, as the

cR

defendant has its principal place of business in this district, and the contract of employment was entered into and terminated in this district.

[PARTIES]

2. Plaintiff Sohil Karimy (Karimy) is an individual residing within this district.

3. Defendant Associated General Contractors of America – San Diego Chapter, Inc., Apprenticeship & Training Trust Fund (Training Trust), is an express trust and an employee welfare plan, as defined in the Employee Retirement Income Security Act (ERISA) § 2(1), 29 U.S.C. § 1001(1). The Training Trust has its principal place of business in San Diego County, and provides apprenticeship and training programs in San Diego, Imperial, Orange and Riverside Counties, California.

4. The "plan sponsor" of the Training Trust is the Associated General Contractors of America – San Diego Chapter, Inc. (AGC), which is an association of employers in the construction industry. Plaintiff is informed and believes that the AGC is incorporated in California as a non-profit corporation.

[FACTS COMMON TO ALL CLAIMS]

APPRENTICESHIP PROGRAMS PROVIDED BY THE TRAINING TRUST

5. The Training Trust is an express trust governed by a Board of Trustees, for the purpose of providing apprenticeship and training programs in the construction industry. It currently offers apprentice programs in the following construction crafts: Carpenter, Cement Mason, Drywall Finisher, Drywall Lather, Heavy Equipment

Operator, Laborer, and Painter. To conduct these apprentice program, the Training Trust has employed in excess of 20 persons at all relevant times, within the State of California, to provide training, coordination, administrative and clerical functions.

6. The Training Trust is sponsored by the AGC, from whose membership the Trustees of the Training Trust are chosen. Members of the AGC (and other employers in the construction industry) may send their employees for training, or request to employ registered apprentices, under the apprenticeship programs of the Training Trust, and thereby obtain the advantages of the employment of these apprentices on public works, as described below.

7. The Training Trust has been approved as a recognized apprenticeship program by the Division of Apprenticeship Standards of the Department of Industrial Relations of the State of California (DIR), pursuant to California Labor Code § 3075. The Training Trust has also been approved as a recognized apprenticeship program by the Office of Apprenticeship Training, Employment and Labor Services of the Department of Labor of the United States of America (DOL), pursuant to the National Apprenticeship Act of 1937 (Fitzgerald Act), 29 U.S.C. §§ 50, *et. seq.*, and implementing regulations, 29 C.F.R. Part 29.

8. As a result of the DIR certification as an apprenticeship program by the DIR, employers who contribute to the Training Trust may employ apprentices enrolled in the apprenticeship program, and pay significantly lower wage rates on public works contracted by a public agency in California. Similarly, certification as an apprenticeship program by the DOL allows employers who contribute to the Training Trust to employ apprentices enrolled in the apprenticeship program, and pay significantly lower wage rates on public works contracted by an agency of the United States of America.

9. Apprentices enrolled in the apprenticeship programs of the Training Trust are required by both federal and state regulation to enter into a written apprenticeship agreement, which is referred to as being "indentured." The apprentices are required to complete a certain amount of on-the-job training with their employer, and to complete a certain number of hours of classroom training in specified subjects, provided by the Training Trust. These minimum standards for apprentices in each craft must be specified in the forms submitted by the Training Trust to the DIR and DOL for approval of each of their apprenticeship programs, and the Training Trust's ability to provide such training is an essential element for approval by both the DIR and DOL.

10. The Training Trust receives contributions from employers participating in the Trust, including AGC members. These contributions are allowed to be credited toward the obligation of these employers to pay prevailing wages on public works (both federal and state), in lieu of cash wages.

11. The Training Trust also receives "Montoya Funds" from the State of California for classroom training. The Training Trust submits a form listing the hours of classroom training actually provided to each apprentice by the instructors employed by the Training Trust, to a "Local Education Agency" (LEA) as defined in California Labor Code § 3074. The LEA then submits those forms to the State of California. Pursuant to California Education Code § 8152(e), the State of California may only reimburse the LEA for hours of instruction actually provided to indentured apprentices under an approved apprenticeship program, at a specified hourly rate per apprentice. The LEA deducts an administrative fee from these funds, and sends the balance to the Training Trust.

12. The Training Trust is required to report the names of its registered

apprentices to the DIR and DOL. The Training Trust is also obligated to report to the DIR and the DOL when an apprentice either is terminated from the apprenticeship program, or graduates. Under both federal and state regulation, an indentured apprentice may only graduate from the apprenticeship program, to become a journeyman in that craft, upon satisfactory completion of on-the-job and classroom training, as specified in the written apprenticeship program standards which the Training Trust has submitted to the DIR and DOL.

EMPLOYMENT OF KARIMY

13. Plaintiff was employed by the Training Trust as a Coordinator from August 2003 through April 2006, and as a Director of Operations and Education from April 2006 until his involuntary termination in September 2007. Throughout his employment with Defendants, Plaintiff performed his job in a capable and competent manner and was regularly awarded merit salary increases, bonuses, and positive evaluations. On September 17, 2007 Plaintiff's contract of employment was involuntarily terminated by the Training Trust.

14. As "Coordinator," some of Karimy's duties involved recruiting contractors, recruiting apprentices, and informing apprentices and contractors of the applicable laws. He was listed by the Training Trust as a "non-exempt" employee, and paid a salary in the range of $55,000.00 to $65,000.00 per year.

15. As "Director of Operations and Education," some of Karimy's duties involved preparing apprenticeship class schedules, attending meetings, recruiting contractors, working with apprentices, and performing several human resources functions.

16. Plaintiff's salary, at the time of his termination, was $80,000.00 per year. He was also entitled to benefits as part of his compensation.

17. Defendant fraudulently submitted false claims to state agencies to receive state funds. Specifically, Defendant knowingly submitted claims indicating that apprentices were receiving more hours of education than apprentices were in fact receiving in order to receive additional Montoya funds from the State.

18. Defendant also fraudulently gave apprentices credit towards graduation for classes they never took, or skills they did not have. In some cases, apprentices were given credit for classes which the Training Trust did not even provide. These fraudulent credits were given at the request of AGC members, including trustees of the Training Trust, and not for any legitimate reason.

19. Defendant also fraudulently back-dated the registration of some apprentices, to a date before they were actually indentured. This was done at the request of AGC members, so those AGC members could pay those employees at the lower apprentice rate, even though they were not really indentured as apprentices at that time.

20. During his employment, Plaintiff made several complaints regarding the submission of fraudulent claims to the state, fraudulent credits given, and fraudulent back-dating of the registration of apprentices. Plaintiff was ordered to assist in these fraudulent activities, despite his protests. As a direct result of his complaints, Plaintiff was retaliated against in the form of a substantial increase in work-load, a negative evaluation, and wrongful termination in violation of public policy.

21. In response to Plaintiff's complaints regarding Defendant's fraudulent

practices, Plaintiff was told by the Executive Director of the Training Trust that if Plaintiff did not like the way things were done, Plaintiff should leave.

22. Also in response to several of Plaintiff's complaints regarding Defendant's fraudulent practices, the Trust Chairman, Tom Brown, reprimanded Plaintiff and told him that Plaintiff's "brown eyes, brown hair, and middle eastern culture may not work in sunny southern California with blue eyes, blond haired people, and maybe you [Karimy] might need to leave." This was only one of several similar remarks made by his superiors regarding Karimy's ethnic background.

23. In July 2007, Plaintiff met with Defendants' Trust Chairman and Executive Director, expressed his concerns regarding Defendant's fraudulent activities, and requested to meet with the Trustees. As a result, in August, 2007, Plaintiff was given a substantially heightened workload, to be completed within one week. As a direct result of Plaintiff's complaints, Defendant gave Plaintiff the only negative work evaluation given to Plaintiff throughout his employment with Defendant. Plaintiff was the only employee evaluated at this time.

24. In September 2007, Plaintiff again requested to meet with the Trustees on September 17, 2007 to discuss Defendant's submission of false claims and other inappropriate conduct described above. His request was denied.

25. Plaintiff's employment was terminated by the Training Trust on September 17, 2007.

/ / /

/ / /

/ / /

[FIRST CLAIM FOR RELIEF]
[VIOLATION OF THE CIVIL RIGHTS ACT]
[42 U.S.C. § 1981]

26. Plaintiff realleges and incorporates by reference all prior allegations.

27. Plaintiff's contract of employment with the Training Trust was a "contract" protected by the Civil Rights Act, 42 U.S.C. § 1981.

28. Plaintiff is of Persian ancestry, with distinctive Middle-Eastern features, and a noticeable accent. He was perceived by his supervisors at the Training Trust as other than a "white citizen." This was made clear by the statement of Tom Brown, Chairman of the Training Trust, that Karimy's "brown eyes, brown hair, and middle eastern culture may not work in sunny southern California with blue eyes, blond haired people, and maybe you [Karimy] might need to leave."

29. The Training Trust had no legal reason to terminate Karimy's employment contract.

30. The Training Trust terminated Karimy's employment contract without legal justification, because (at least in part) that he was perceived as not a "white citizen." By so doing it violated 42 U.S.C. § 1981.

31. As a result of defendant's violation of 42 U.S.C. § 1981, plaintiff has been deprived of the benefits of his employment contract, and has suffered humiliation and emotional distress.

32. Defendant's violation of the Civil Rights Act was intentional and meant

to cause harm to plaintiff. Plaintiff is therefore entitled to recover punitive damages for this violation.

33. Pursuant to 42 U.S.C. § 1988(b), plaintiff is also entitled to recover his attorney fees and costs from defendant.

[SECOND CLAIM FOR RELIEF]
[INTENTIONAL EMPLOYMENT DISCRIMINATION]
[42 U.S.C. §§ 2002e-2 and 2002e-5(f)]

34. Plaintiff realleges and incorporates by reference all prior allegations.

35. Plaintiff is of Persian ethnicity, which was perceived by his supervisors at the Training Trust as other than a "white citizen." This was made clear by the statement of Tom Brown, Chairman of the Training Trust, that Karimy's "brown eyes, brown hair, and middle eastern culture may not work in sunny southern California with blue eyes, blond haired people, and maybe you [Karimy] might need to leave."

36. The Training Trust had no legal reason to terminate Karimy's employment contract.

37. The Training Trust discharged Karimy from his employment, without legal justification, because (at least in part) of his ethnicity, in violation of 42 U.S.C. § 2002e-2(a)(1).

38. As a result of his illegal discharge, Karimy has suffered lost wages and benefits, future earnings, humiliation and emotional distress.

39. Defendant's violation of 42 U.S.C. § 2002e-2(a)(1) was intentional and meant to cause harm to plaintiff. Plaintiff is therefore entitled to recover punitive damages for this violation.

40. Pursuant to 42 U.S.C. § 2002e-5(k), plaintiff is also entitled to recover his attorney fees and costs from defendant.

41. On or about January 16, 2008, Karimy filed a charge with the U.S. Equal Opportunity Commission (EEOC), which was given charge number 488-2008-00198. The charge was concurrently filed with the California Fair Employment and Housing Commission (FEHC).

42. On February 1, 2008, at his request, the EEOC issued a "Notice of Right To Sue" as to his charge. A copy of that Notice of Right to Sue is attached here as Exhibit 1.

43. On February 1, 2008, at his request, the FEHC issued a "Notice of Right to Sue" as to his charge. A copy of that Notice of Right to Sue is attached here as Exhibit 2.

[THIRD CLAIM FOR RELIEF]
[FAIR LABOR STANDARDS ACT]
[29 U.S.C. § 216(b)]

44. Plaintiff realleges and incorporates by reference all prior allegations.

45. Plaintiff's employment was not exempt from the requirement to pay weekly overtime, under any provision of the Fair Labor Standards Act (FLSA), 29

U.S.C. §§ 201 to 219, and implementing regulations. In fact, Defendant recognized Plaintiff's non-exempt status as a Coordinator in writing.

46. Throughout his employment with Defendant, Plaintiff frequently worked more than forty hours per week with the knowledge, consent and acquiescence of the Defendants' supervisors, performing tasks which have been assigned to him.

47. Plaintiff was not generally paid at the rate of time-and-one-half his regular rate of pay for all hours worked in excess of forty per week. Plaintiff requested overtime pay on numerous occasions. On at least one occasion he was paid overtime as requested. However, on no other occasion was he paid overtime for time worked over forty in a week.

48. Defendant's failure to pay overtime to Plaintiff, and other employees of Defendant, is in violation of 29 U.S.C. §§ 207(a) and 215(a)(2).

49. Pursuant to 29 U.S.C. § 216(b), the Plaintiff is entitled to recover his unpaid overtime wages, and an equal amount of liquidated damages.

50. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover a reasonable amount of attorney fees, and costs incurred in this action.

[FOURTH CLAIM FOR RELIEF]
[CALIFORNIA FAIR EMPLOYMENT & HOUSING ACT]
[CA Government Code §§ 12940 and 12965]

51. Plaintiff realleges and incorporates by reference all prior allegations.

52. This Court has supplemental jurisdiction over this claim, as arising under the same facts as the First and Second Claims for Relief.

53. Plaintiff is of Persian ancestry, which was perceived by his supervisors at the Training Trust as other than a "white citizen." This was made clear by the statement of Tom Brown, Chairman of the Training Trust, that Karimy's "brown eyes, brown hair, and middle eastern culture may not work in sunny southern California with blue eyes, blond haired people, and maybe you [Karimy] might need to leave."

54. The Training Trust had no legal reason to terminate Karimy's employment contract.

55. The Training Trust discharged Karimy from his employment, without legal justification, because (at least in part) of his ancestry, in violation of California Government Code § 12940(a).

56. As a result of his illegal discharge, Karimy has suffered lost wages and benefits, future earnings, humiliation and emotional distress.

57. Defendant's violation of California Government Code § 12940(a) was intentional and meant to cause harm to plaintiff. Plaintiff is therefore entitled to recover punitive damages for this violation.

58. Pursuant to California Government Code § 12965(b), plaintiff is also entitled to recover his attorney fees and costs from defendant.

59. On or about January 16, 2008, Karimy filed a charge with the U.S.

Equal Opportunity Commission (EEOC), which was given charge number 488-2008-00198. The charge was concurrently filed with the California Fair Employment and Housing Commission (FEHC).

60. On February 1, 2008, at his request, the EEOC issued a "Notice of Right To Sue" as to his charge. A copy of that Notice of Right to Sue is attached here as Exhibit 1.

61. On February 1, 2008, at his request, the FEHC issued a "Notice of Right to Sue" as to his charge. A copy of that Notice of Right to Sue is attached here as Exhibit 2.

[FIFTH CLAIM FOR RELIEF]
[CALIFORNIA OVERTIME LAWS]
[CA LABOR CODE § 510; IWC Order No. 4-2001]

62. Plaintiff realleges and incorporates by reference all prior allegations.

63. This Court has supplemental jurisdiction over this claim, as arising under the same facts as the Third Claim for Relief.

64. During times relevant to this action, California law, as set forth in California Labor Code § 510 and the Wage Orders of the Industrial Welfare Commission, including Wage Order No. 4-2001, and elsewhere, provides that if an employee works more than 40 hours per week, or more than 8 hours per day, that employee is entitled to overtime compensation at the rate of one and one-half of his or her ordinary hourly rate for each overtime hour worked, and in some circumstances twice his or her ordinary rate.

65. Plaintiff's employment was not exempt from the requirement to pay overtime, under any provision of California law and implementing regulations. In fact, Defendant recognized Plaintiff's non-exempt status as a Coordinator in writing.

66. Throughout his employment, Plaintiff frequently worked more than eight hours per day and more than forty hours per week with the knowledge, consent and acquiescence of the Defendants' supervisors, performing tasks which have been assigned to him.

67. Plaintiff was not generally paid at the rate of time-and-one-half his regular rate of pay for all hours worked in excess of eight hours per day or forty per week. Plaintiff requested overtime pay on numerous occasions. On at least one occasion he was paid overtime as requested. However, on no other occasion was he paid overtime for time worked over eight in a day.

68. Pursuant to California Labor Code § 1194, Plaintiff is entitled to the balance of the full amount of overtime wages owed them, calculated at the proper rate, together with interest from the date those wages were due.

69. Pursuant to California Labor Code § 1194(a), Plaintiff is entitled to recover his reasonable attorney fees and costs.

[SIXTH CLAIM FOR RELIEF]
[FAILURE TO PAY WAGES UPON TERMINATION]
[CA Labor Code § 203]

70. Plaintiff incorporates by reference all prior allegations.

71. This Court has supplemental jurisdiction over this claim, as arising under the same facts as the Third Claim for Relief.

72. California Labor Code section 203 requires every employer to pay an employee whose employment has ceased all wages owed to the employee at stated periods of time, in no event later than 72 hours after the employment has ended.

73. Plaintiff was not paid all of the wages due him upon termination, as described in the previous allegations. In addition, Defendant failed to pay Plaintiff all of his accrued vacation pay upon termination. These wages still have not been paid prior to the filing of this action. Defendant's failure to pay said wages on time or at all was willful within the meaning of Labor Code section 203.

74. Plaintiff is entitled to one day's wages for each day he was not timely paid all wages due on and after the end of his employment, up to a maximum of 30 days' wages, plus all accrued vacation still unpaid.

[SEVENTH CLAIM FOR RELIEF]

[WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY]

75. Plaintiff realleges and incorporates by reference all prior allegations.

76. This Court has supplemental jurisdiction over this claim, as arising under the same facts as the First and Second Claims for Relief. This Claim is plead in the alternative to the First, Second and Fourth Claims. Plaintiff is unsure whether the real reason for his termination was primarily his race or primarily his complaints about illegal acts of defendant, but Plaintiff is sure that the real reason is one or both of those, and that there was no legitimate, legal, reason for his termination.

77. Pursuant to California Education Code § 8152(e), the State of California may only reimburse the Training Trust (through an LEA) for hours of instruction actually provided to indentured apprentices under an approved apprenticeship program, at a specified hourly rate per apprentice. Pursuant to Government Code §§ 12650 and 12651, it is illegal to submit false claims to the State of California. Pursuant to California Labor Code § 3075 and implementing regulations, and the Fitzgerald Act and implementing regulations, Defendant was obligated to provide the training for skills as stated in its application for approval to the DIR and DOL, respectively.

78. Contrary to the law and public policy of California, Defendant routinely submitted false statements to the State of California, claiming that apprentices had been given hours of instruction which they did not in fact receive. Defendant knew this information was false, and specifically instructed and required Plaintiff to put this false information on the statements.

79. Defendant also fraudulently gave apprentices credit towards graduation for classes they never took, or skills they did not have. In some cases, apprentices were given credit for classes which the Training Trust did not even provide. These fraudulent credits were given at the request of AGC members, including trustees of the Training Trust, and not for any legitimate reason. This was contrary to the law and the representations made by Defendant in its applications for approval to the DIR and DOL.

80. Defendant also fraudulently back-dated the registration of some apprentices, to a date before they were actually indentured. This was done at the request of AGC members, so those AGC members could pay those employees at the lower apprentice rate, even though they were not really indentured as apprentices at

that time. This was contrary to the law and the representations made by Defendant in its applications for approval to the DIR and DOL.

81. Between November 2006 and September 2007, Plaintiff made several complaints regarding the submission of fraudulent claims to the state, fraudulent credits given, and fraudulent back-dating of the registration of apprentices. Plaintiff was ordered to assist in these fraudulent activities, despite his protests. As a direct result of his complaints, Plaintiff was retaliated against in the form of a substantial increase in work-load, a negative evaluation, and wrongful termination in violation of public policy.

82. In response to one of Plaintiff's complaints regarding Defendant's fraudulent activities, Plaintiff was told by the Executive Director that if Plaintiff did not like the way things were done, Plaintiff should leave.

83. In July 2007, Plaintiff met with Defendants' Trust Chairman and Executive Director, expressed his concerns regarding Defendant's fraudulent activities, and requested to meet with the Trustees. As a result, in August, 2007, Plaintiff was given a substantially heightened workload, to be completed within one week. As a direct result of Plaintiff's complaints, Defendant gave Plaintiff the only negative work evaluation given to Plaintiff throughout his employment with Defendant. Plaintiff was the only employee evaluated at this time.

84. In September 2007, Plaintiff again requested to meet with the Trustees on September 17, 2007 to discuss Defendant's submission of false claims and other inappropriate conduct described above. His request was denied.

85. On September 17, 2007, Plaintiff was terminated by Defendant from

his employment. The true reason for his termination was because he complained of about Defendants' fraudulent activity, as set forth above.

86. As a direct and proximate result of the Defendants' willful, knowing, intentional and wrongful termination of his employment, Plaintiff has suffered and will continue to suffer substantial losses in earnings and other employment benefits.

87. As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, he has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

88. Defendants took such discriminatory action with the intent to vex, injure and annoy Plaintiff, to impose an unjust hardship upon him for asserting rights under the law, in blatant, wanton, conscious, and callous disregard of his rights, and to create a climate of fear to deter its other employees from asserting rights. Accordingly, Plaintiff is entitled to compensatory and punitive damages, according to proof at trial.

89. In addition, Plaintiff is entitled to an award of fees and costs for his claim of wrongful termination.

[EIGHTH CLAIM FOR RELIEF]
[UNFAIR BUSINESS PRACTICES]
[CA BUSINESS & PROFESSIONS CODE § 17200 et seq.]

90. Plaintiff realleges and incorporates by reference all prior allegations.

91. This Court has supplemental jurisdiction over this claim, as arising under the same facts as the Third Claim for Relief.

92. This claim is brought by Plaintiff on behalf of himself and the general public, pursuant to Business and Professions Code §§ 17200, *et. seq*. The failures to pay overtime, and the other conduct of the Defendants above constitute unlawful, unfair and fraudulent business acts and practices, and unfair competition, within the meaning of California Business and Professions Code §§ 17200 *et seq*. Plaintiff is a "person" within the meaning of Business and Professions Code § 17204, with standing to bring this suit for injunctive relief and restitution, to remedy the harm to him and to vindicate the public interest.

93. Defendant has acted contrary to these public policies and has thus engaged in unlawful and unfair business practices in violation of the Business and Professions Code §§ 17200, *et seq*, depriving Plaintiff of rights, benefits, and privileges guaranteed to all employees under law. As a result, Defendant has been unjustly enriched.

94. Business and Professions Code § 17203 provides that the Court may restore an aggrieved party any money or property acquired by means of unlawful and unfair business practices. Plaintiff seeks restitution of all unpaid wages, according to proof.

95. Plaintiff is entitled to recover attorney fees and costs for bringing this claim, pursuant to California Code of Civil Procedure § 1021.5.

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendant, as follows:

I. ON THE FIRST CLAIM FOR RELIEF:

A. Back pay, at his last rate of pay, from the date of his termination until judgment, together with interest;

B. Restoration or payment of all benefits to which Plaintiff would have been entitled at the time of his termination, from the date of his termination until judgment, together with interest;

C. Front pay of wages and benefits to which Plaintiff would have been entitled, calculated from the date of Judgment to the date upon which Plaintiff could reasonably be expected to obtain equivalent employment;

D. Damages for emotional distress caused by Plaintiff's illegal termination, according to proof;

E. Punitive damages, according to proof;

F. For attorney fees and costs of suit, pursuant to 42 U.S.C. § 1988(b); and

G. Such other relief which the Court may deem just.

/ / /

II.  ON THE SECOND CLAIM FOR RELIEF:

   A.  Back pay, at his last rate of pay, from the date of his termination until judgment, together with interest;

   B.  Restoration or payment of all benefits to which Plaintiff would have been entitled at the time of his termination,  from the date of his termination until judgment, together with interest;

   C.  Front pay of wages and benefits to which Plaintiff would have been entitled, calculated from the date of Judgment to the date upon which Plaintiff could reasonably be expected to obtain equivalent employment;

   D.  Damages for emotional distress caused by Plaintiff's illegal termination, according to proof;

   E.  Punitive damages, according to proof;

   F.  For attorney fees and costs of suit, pursuant to 42 U.S.C. § 2002e-5(k); and

   G.  Such other relief which the Court may deem just.


III.  ON THE THIRD CLAIM FOR RELIEF:

   A.  For unpaid weekly overtime, at one-and-one-half times his regular rate of pay, for all work from three years prior to the filing of this action, according to proof;

B. For an equal amount of liquidated damages, pursuant to 29 U.S.C. § 216(b);

C. For attorney fees and costs, pursuant to 29 U.S.C. § 216(b); and

D. For such further relief as this Court may deem just and proper.

IV. ON THE FOURTH CLAIM FOR RELIEF:

A. Back pay, at his last rate of pay, from the date of his termination until judgment, together with interest;

B. Restoration or payment of all benefits to which Plaintiff would have been entitled at the time of his termination, from the date of his termination until judgment, together with interest;

C. Front pay of wages and benefits to which Plaintiff would have been entitled, calculated from the date of Judgment to the date upon which Plaintiff could reasonably be expected to obtain equivalent employment;

D. Damages for emotional distress caused by Plaintiff's illegal termination, according to proof;

E. Punitive damages, according to proof;

F. For attorney fees and costs of suit, pursuant to California Government Code § 12965(b); and

G. Such other relief which the Court may deem just.

V. ON THE FIFTH CLAIM FOR RELIEF:

A. All unpaid hours worked, and the balance of the full amount of overtime wages owed, pursuant to California Labor Code § 1194;

B. Interest on the overtime wages, from the dates they were due;

C. Reasonable attorney fees and costs pursuant to California Labor Code § 1194(a); and

D. Such further relief as this Court deems just and proper.

VI. ON THE SIXTH CLAIM FOR RELIEF:

A. Judgment for one day's wages for each day from termination to payment, up to a maximum of 30 days' wages, at his last rate of pay;

B. Attorney fees and costs; and

C. Such further relief as this Court deems just and proper.

VII. ON THE SEVENTH CLAIM FOR RELIEF:

A. Back pay, at his last rate of pay, from the date of his termination until judgment, together with interest;

B. Restoration or payment of all benefits to which Plaintiff would have been entitled at the time of his termination, from the date of his termination until judgment, together with interest;

C. Front pay of wages and benefits to which Plaintiff would have been entitled, calculated from the date of Judgment to the date upon which Plaintiff could reasonably be expected to obtain equivalent employment;

D. Damages for humiliation and emotional distress caused by Plaintiff's illegal termination, according to proof;

E. Punitive damages, according to proof;

F. For attorney fees and costs of suit; and

G. Such other relief which the Court may deem just.

VIII. ON THE EIGHTH CLAIM FOR RELIEF:

A. For an Accounting and Restitution of the difference between the wages actually paid Plaintiff, and the wages required by law to be paid within four years of filing this complaint;

B. For a preliminary and a permanent injunction enjoining Defendant from failing to pay overtime to Coordinators, and for threatening or punishing in any way, employees who complain or testify about Defendant's illegal practices; and

/ / /

C. For attorney fees and costs of suit, pursuant to California Code of Civil Procedure § 1021.5; and

D. Such further relief as this Court may deem just and proper.

Respectfully Submitted,

Dated: February 12, 2008

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
STEVEN T. NUTTER, Members of
REICH, ADELL & CVITAN
A Professional Law Corporation

By: ______________________
J. DAVID SACKMAN
Attorneys for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury to the fullest extent permitted in this action, including any claims by Defendants in this action.

Dated: February 12, 2008

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
STEVEN T. NUTTER, Members of
REICH, ADELL & CVITAN
A Professional Law Corporation

By: ______________________
J. DAVID SACKMAN
Attorneys for Plaintiff

EXHIBIT 1

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Sohil Karimy**
**13099 Via Suena**
**Valley Center, CA 92082**

From: **San Diego Local Office**
**401 B Street**
**Suite 510**
**San Diego, CA 92101**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **488-2008-00198** | **Carmen Ortiz, Investigator** | **(619) 557-7288** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

[signature]

**Raul G. Green,**
**Acting Director**

2/1/2008
*(Date Mailed)*

Enclosures(s)

cc: **Pete Saucedo**
**Human Resources Director**
**ASSOCIATED GENERAL CONTRACTORS OF AMERICA**
**P.O. Box 927870**
**San Diego, CA 92192**

**Natalia Bautista, Esq.**
**REICH, ADELL & CVITAN**
**3550 Wilshire Blvd., Ste. 2000**
**Los Angeles, CA 90010**

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1350 Front Street, Suite 3005 San Diego, CA 92101
(619) 645-2681 TTY (800) 700-2320 Fax (619) 645-2683
www.dfeh.ca.gov

February 4, 2008

SOPHIL KARIMY
13099 Via Suena
Valley Center, CA 92082

RE: E200708D1003-00-c
KARIMY/ASSOCIATED GENERAL CONTRACTORS OF AMERICA

Dear SOPHIL KARIMY:

**NOTICE OF CASE CLOSURE**

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 18, 2008 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Belinda LeDoux

Belinda LeDoux
District Administrator

cc: Case File

Director
Human Resources/Personnel
ASSOCIATED GENERAL CONTRACTORS OF AMERICA
P.O. Box 927870
San Diego, CA 92192-7870

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 147668 - BH
* * C O P Y * *
February 14, 2008
15:29:57

Civ Fil Non-Pris
USAO #.: 08CV0297 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.: $350.00 CK
Check#.: BC# 1331

Total-> $350.00

FROM: KARIMY V. ASSOCIATED GENERAL
CONTRACTORS OF AMERICA
CIVIL FILING

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED 08 FEB 14 PM 3:33
CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

ORIGINAL

**I. (a) PLAINTIFFS**
SOHIL KARIMY

(b) County of Residence of First Listed Plaintiff: San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Reich, Adell & Cvitan
3550 Wilshire Blvd., Suite 2000, L.A., CA 90010 (213) 386-3860

**DEFENDANTS**
Associated General Contractors of America – San Diego Chapter, Inc., Apprenticeship & Training Trust Fund

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
'08 CV 0297 L CAB

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §§ 1981, 2002e-2, 29 U.S.C. § 216(b)

Brief description of cause:
Employment Discrimination / Fair Labor Standards Act

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ > $100,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 02/12/2008
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 147668 AMOUNT $350 2/14/08 BH APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______