1  David P. Wolds (Bar No. 96686)
   Laura B. Riesenberg (Bar No. 185830)
2  Farzeen Essa (Bar No. 246971)
   PROCOPIO, CORY, HARGREAVES
3     & SAVITCH LLP
   530 B Street, Suite 2100
4  San Diego, California 92101
   Telephone: 619.238.1900
5  Facsimile: 619.235.0398

6  Attorneys for Defendant,
   ASSOCIATED GENERAL
7  CONTRACTORS OF AMERICA SAN
   DIEGO CHAPTER, INC.
8  APPRENTICESHIP AND TRAINING
   TRUST FUND

9

                    UNITED STATES DISTRICT COURT
10
                 SOUTHERN DISTRICT OF CALIFORNIA
11

12  SOHIL KARIMY,                          Case No. 08 CV 0297 L (CAB)

13            Plaintiff,                   MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
14  v.                                     DEFENDANT ASSOCIATED
                                           GENERAL CONTRACTORS OF
15  ASSOCIATED GENERAL CONTRACTORS         AMERICA, SAN DIEGO CHAPTER,
    OF AMERICA – SAN DIEGO CHAPTER,        INC. APPRENTICESHIP AND
16  INC., APPRENTICESHIP & TRAINING        TRAINING TRUST FUND'S MOTION
    TRUST FUND,                            TO DISMISS FOR LACK OF
17                                         SUBJECT MATTER JURISDICTION
              Defendants.                  [Fed.R.Civ.P. §12(b)(1)]
18
                                           Judge M. James Lorenz
19
                                           Date:      June 23, 2008
20                                         Time:      10:30 a.m.
                                           Ctrm:      14
21

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

112893.000001/899278.02

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page**

I.      STATEMENT OF FACTS ........................................................................................2

        A.      The Complaint .........................................................................................2
        B.      The Parties ..............................................................................................3
        C.      The Arbitration Agreements....................................................................5
        D.      Karimy Rejected The Trust Fund's Arbitration Demand ........................6

II.     THE LEGAL STANDARD ......................................................................................6

        A.      Fed.R.Civ.Proc.12(b)(1) Standard...........................................................6
        B.      Fed.R.Civ.P 12(b)(1) Motion to Dismiss Under The FAA ....................7

III.    ARGUMENT............................................................................................................8

        A.      Arbitrability Is Governed By The FAA..................................................8
        B.      The Disputes Raised In The Complaint Are Subject To Arbitration ..............10

IV.     CONCLUSION ......................................................................................................12

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

# TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Adkins v. Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) ........................................................................9

*Allied-Bruce Terminex Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995) ........................................................................9

*AT&T Technologies, Inc. v. Communications Workers of America*,
  475 U.S. 643 (1986) ........................................................................12

*Blinco v. Green Tree Servicing, LLC*,
  400 F.3d 1308 (11th Cir.2005) ........................................................................11

*Bosinger v. Phillips Plastic Corp.*
  57 F.Supp.2d 986 (S.D.Cal 1999) ........................................................................6, 8, 11

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ........................................................................9

*EEOC v. Luce, Forward, Hamilton & Scripps*,
  345 F.3d 742 (9th Cir. 2003) ........................................................................9

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ........................................................................9

*Filimex LLC v. Novoa Investments, LLC*,
  2006 WL 2091661 (D. Ariz. 2006) ........................................................................6

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir.1987) ........................................................................11

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*,
  282 F.Supp.2d 1131 (N.D.Cal. 2003) ........................................................................12

*Hornbeck Offshore Corp. v. Coastal Carriers Corp.*,
  981 F.2d 752 (5th Cir.1993) ........................................................................11

*IBEW, Local No. 4 v. KTVI-TV, Inc.*,
  985 F.2d 415 (8th Cir.1993) ........................................................................12

*Impress Communications v. UnumProvident Corp.*,
  335 F.Supp.2d 1053 (C.D.Cal. 2003) ........................................................................7

*Inlandboatmens Union of the Pacific v. Dutra Group*,
  279 F.3d 1075 (9th Cir. 2002) ........................................................................7

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ........................................................................7

ii

112893.000001/899278.02

*McCarthy v. United States,*
   850 F.2d 558 (9th Cir. 1988) ....................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*
   473 U.S. 614 (1985) ..................................................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) .................................................................................................8, 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
   388 U.S. 395 (1967) ..................................................................................................8

*Ritza v. International Longshoremen's and Warehousemen's Union,*
   837 F.2d 365 (9th Cir. 1988) ....................................................................................7

*Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,*
   863 F.2d 315 (4th Cir.1988) ...................................................................................11

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) ..................................................................................10

*Sparling v. Hoffman Constr. Co.,*
   864 F.2d 635 (9th Cir. 1988) .................................................................................6, 8

*Stock West, Inc. v. Confederated Tribes,*
   873 F.2d 1221 (9th Cir. 1989) ..................................................................................7

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.,*
   368 F.3d 1053 (9th Cir. 2004) ..................................................................................6

### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

9 U.S.C. §§ 1-16 ............................................................................................................2

9 U.S.C. § 2 ...............................................................................................................7, 8

9 U.S.C. §§ 3, 4 .............................................................................................................7

9 U.S.C. § 4 ...................................................................................................................8

29 U.S.C. §§ 1001 *et seq.* ............................................................................................3

Fed.R.Civ.P. 12(b)(1) ............................................................................................2, 6, 7

Fed.R.Civ.P. 12(b)(6) ....................................................................................................6

112893.000001/899278.02

1    Defendant, Associated General Contractors of America, San Diego Chapter, Inc.

2    Apprenticeship and Training Trust Fund, ("Defendant" or "Trust Fund") respectfully

3    submits the following memorandum of points and authorities in support of its motion to

4    dismiss the claims asserted by Plaintiff, Sohil Karimy, ("Plaintiff" or "Karimy") for lack of

5    subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that Karimy

6    and the Trust Fund contracted to resolve the disputes set forth in the present action

7    through binding arbitration.  Alternatively, Trust Fund brings this motion to dismiss as a

8    "non-enumerated" Rule 12(b) motion to dismiss for failure to exhaust non-judicial

9    remedies.  This action is subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

10                          **I.    STATEMENT OF FACTS**

11    **A.    The Complaint**

12    In his Complaint for Violation of The Civil Rights Act, Title VII, The Fair Labor

13    Standards Act and Related State Claims ("Complaint"), filed on February 14, 2008,

14    Karimy asserts the following alleged claims against the Trust Fund, his former employer:

15    (1)    Violation of the Civil Rights Act, 42 U.S.C. section 1981, based on
16          the termination of Karimy's employment allegedly because of his
             ancestry, i.e., Persian.  (Complaint §§ 26-33.);

17    (2)    Intentional employment discrimination in violation of 42 U.S.C.
18          sections 2002e-2 and 2002e-5(f), based on termination of Karimy's
             employment allegedly because of his ethnicity.  (Complaint §§ 34-
19          43.);

20    (3)    Violation of the Fair Labor Standards Act, 29 U.S.C. section 216(b),
             based on alleged failure to pay overtime compensation due and
21          owing to Karimy.  (Complaint §§ 44-50.);

22    (4)    Violation of the California Fair Employment and Housing Act,
             California Government Code sections 12940 and 12965, based on
23          the termination of Karimy's employment allegedly because of his
             ancestry, i.e., Persian.  (Complaint §§ 51-61.);

24    (5)    Violation of California Labor Code section 510, California IWC
25          Wage Order No. 4-2001, based on alleged failure to pay overtime
             compensation due and owing to Karimy.  (Complaint §§ 62-69.);

26    / / /

27    / / /

28

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

(6)    Waiting time penalties under California Labor Code section 203 based on the Trust Fund's alleged failure to pay all wages due and owing upon termination of Karimy's employment with the Trust Fund. (Complaint §§ 70-74.);

(7)    Wrongful discharge in violation of public policy based on the termination of Karimy's employment allegedly in retaliation for Karimy's allegedly engaging in protected activities, i.e., "whistle blowing. (Complaint §§ 75-89.); and

(8)    Unfair business practices in violation of California Business and Professions Code sections 17200 *et seq.* based on the alleged unlawful acts identified in Karimy's first seven claims. (Complaint §§ 90-95.)

Karimy's claims arise from his employment with and the termination of his employment by the Trust Fund.

## B.    The Parties

The Trust Fund is governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. sections 1001 *et seq.*, and applicable laws of the State of California, and is the funding vehicle through which employee benefits are provided in the form of training and education to registered apprentices working in the construction industry on private and public construction projects throughout San Diego County, Orange County, Riverside County, San Bernardino County, and Imperial County. (Declaration of Pete Saucedo in Support of Defendant's Motion to Dismiss ("Saucedo Dec."), ¶ 3.)

The apprenticeship and training program ("Training Program") is sponsored by the Associated General Contractors of America, San Diego Chapter, Inc. ("AGC San Diego"), a chapter of the Associated General Contractors of America ("AGC"), located in Arlington, Virginia. (Saucedo Dec. ¶ 6.)   The AGC is a national construction trade association, which, in coordination with its local chapters, provides trade association services to participating employers throughout the United States.  The Training Program is funded by contributions to the Trust Fund from participating employers that are members of AGC San Diego.  The Training Program is designed to meet the needs of contractors in the

1 construction industry that employ and train apprentices on State of California public

2 works, federal Davis-Bacon Act projects and private construction projects.  (Saucedo

3 Dec. ¶4.)  The Training Program has been approved by the State of California Division of

4 Apprenticeship Standards and the federal Department of Labor Office of Apprenticeship

5 for various trades.  (Saucedo Dec. ¶ 5.)

6      The Training Program, funded through the Trust Fund, purchases safety and other

7 materials from AGC as well as national retailers that are manufactured outside of

8 California.  (Saucedo Dec. ¶ 7.)  In addition, the Training Program, through the Trust

9 Fund, also purchases textbooks utilized in the program from publishers located through

10 the United States.  (Saucedo Dec. ¶ 8.)  Trust Fund employees, including Karimy, attend

11 conferences, meetings and educational seminars outside of California as part of their

12 employment-related duties and responsibilities.  (Saucedo Dec. ¶ 17.)  The Trust Fund

13 also uses the instrumentalities of interstate commerce in operating the Training Program.

14 (Saucedo Dec. ¶¶ 9-10.)

15      In April 2003, Karimy became employed by the Trust Fund as coordinator for the

16 Training Program.  (Complaint ¶13; Saucedo Dec. ¶11.)  As a Training Program

17 coordinator, initially working in Orange County, Karimy's duties included recruiting

18 contractors, recruiting apprentices, overseeing instructors, interacting with apprentices as

19 their advocate, and facility oversight.  (Complaint ¶ 14; Saucedo Dec. ¶12.)  During 2006,

20 Karimy worked as a Training Program coordinator in San Diego County.  (Saucedo Dec.

21 ¶12.)  In April 2006, Plaintiff was promoted to director of operations and education for the

22 Training Program.  (Saucedo Dec. ¶13.)  As director, he primarily was responsible for

23 managing and supervising Training Program coordinators employed by the Trust Fund

24 and developing and coordinating the Training Program curriculum.  (Saucedo Dec. ¶13.)

25 Plaintiff's employment with Defendant was terminated on September 17, 2007.

26 (Complaint ¶13; Saucedo Dec. ¶19.)

27 / / /

28 / / /

1  **C.    The Arbitration Agreements**

2      On November 16, 2005, Karimy entered into an At-Will Employment and

3  Arbitration Agreement with the Trust Fund.  The Arbitration Agreement provides, in

4  pertinent part:

5      Employee and the Trust Fund agree that in the event Employee's
       employment is terminated (either by the Trust Fund or the
6      Employee) **any dispute** that may arise between them relating to
       such termination of employment (including, without limitation, any
7      claim(s) based on common law, any federal or state statute, Title
       VII of the Civil Rights Act of 1964, as amended, the California Fair
8      Employment and Housing Act, any statute or provision relating to
       employment discrimination and/or employment rights, the federal or
9      any state constitution and/or any public policy) will be determined
       by arbitration and not by a lawsuit or resort to court process. . . .
10     **Such arbitration shall be the exclusive forum for any dispute
       between Employee and the Trust Fund related to such
11     termination of employment.**  The arbitration of issues relating to
       the termination of Employee's employment will be submitted
12     pursuant to the Trust Fund's employment arbitration rules and
       procedures which in effect on the date of termination.  The
13     employment arbitration rules and procedures are available from the
       Trust Fund on request, and are incorporated by reference.  It is
14     agreed that the arbitrator's decision will be final and binding on the
       Employee and the Trust Fund.
15

16  (Declaration of David P. Wolds ("Wolds Dec."), ¶ 2, Ex. A, page 2, Section 5, emphasis

17  added).

18      In addition, Section 6 of the Employment Agreement states in bold and capital

19  letters:

20      **NOTICE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING
        TO HAVE ANY ISSUE CONCERNING THE TERMINATION OF
21      YOUR EMPLOYMENT DECIDED BY NEUTRAL ARBITRATION
        AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR
22      COURT TRIAL.**

23  *Id.* at page 2, Section 6.

24      On or about June 28, 2006, in conjunction with Karimy's promotion to Training

25  Program director of operations and education, Karimy executed a second At-Will

26  Employment and Arbitration Agreement (collectively, "Agreements") containing an

27  identical arbitration provision and notice.  (Wolds Dec. ¶ 3.)  As part of his duties and

28  responsibilities during this employment with the Trust Fund, Karimy participated in the

112893.000001/899278.02

1   orientation of new hires, which included presenting identical At-Will Employment and

2   Arbitration Agreements to newly employed Trust Fund employees and explaining that by

3   executing such agreements, Trust Fund employees and the Trust Fund were agreeing to

4   arbitration.  (Saucedo Dec. ¶ 14.)

5           **D.    Karimy Rejected The Trust Fund's Arbitration Demand**

6           By filing the present action in District Court, Karimy has failed to arbitrate his

7   disputes with the Trust Fund as required under the Agreements.  Prior to filing this

8   motion to dismiss, the Trust Fund requested that Karimy, consistent with his contractual

9   obligation, submit his alleged claims to arbitration under the terms of the Agreements.

10  Karimy, however, has refused to submit his claims to arbitration under the JAMS

11  Employment and Arbitration Rules and Procedures, as required under the Trust's

12  Employment Arbitration Rules and Procedures, and incorporated into the Agreements.

13  (Wolds Dec. ¶¶ 4-6, Exs. C-E.)  As discussed below, Karimy is obligated to submit the

14  present dispute to arbitration, and, as a result, the court is without jurisdiction to

15  adjudicate Karimy's claims.

16          **II.    THE LEGAL STANDARD**

17          **A.    Fed.R.Civ.Proc.12(b)(1) Standard**

18          Where parties are bound to arbitrate a dispute, courts lack subject matter

19  jurisdiction over the dispute and may dismiss the action.  The FAA empowers courts to

20  stay actions subject to contractual arbitration, or alternatively, to dismiss such actions for

21  lack of subject matter jurisdiction.  *Bosinger v. Phillips Plastic Corp.* 57 F.Supp.2d 986,

22  989 (S.D.Cal 1999), *citing Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.

23  1988) (*sua sponte* dismissal of claims subject to arbitration).  District Courts have

24  properly dismissed actions subject to federal arbitration under Fed.R.Civ.P. 12(b)(6) and

25  Fed.R.Civ.P. 12(b)(1).  *Thinket Ink Information Resources, Inc. v. Sun Microsystems,*

26  *Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (the District Court did not err in dismissing

27  claims under Fed.R.Civ.P. 12(b)(6)); and *Filimex LLC v. Novoa Investments, LLC,* 2006

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

1  WL 2091661, *2 (D. Ariz. 2006) (Rule 12(b)(1) is a flexible rule and vehicle for dismissal

2  for failure to exhaust administrative remedies).

3       Alternatively, the courts have held that a failure to exhaust non-judicial remedies

4  is a "matter in abatement" and such failure is properly raised in a motion to dismiss as a

5  "non-enumerated" Rule 12(b) motion. *Inlandboatmens Union of the Pacific v. Dutra*

6  *Group,* 279 F.3d 1075, 1078 (9th Cir. 2002), *citing Ritza v. International Longshoremen's*

7  *and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988). "Non-enumerated"

8  Rule 12(b) motions are governed by general motion provisions under the Federal Rules

9  of Civil Procedure, which permit hearing motions based on facts outside the pleadings.

10  *Ritza*, 837 F.2d 3 at 369. Here, the Trust Fund brings its motion to dismiss for Karimy's

11  failure to exhaust his non-judicial remedies in arbitration as a Fed.R.Civ.P. 12(b)(1)

12  motion or, in the alternative, as a "non-enumerated" Rule 12(b) motion to dismiss.

13       In ruling on a Rule 12(b)(1) motion to dismiss, the court is not limited to the

14  allegations of the pleadings, but may review any evidence, including declarations and

15  witness testimony, to resolve factual disputes regarding jurisdiction. *McCarthy v. United*

16  *States*, 850 F.2d 558, 560 (9th Cir. 1988); *Impress Communications v. UnumProvident*

17  *Corp.,* 335 F.Supp.2d 1053 (C.D.Cal. 2003), *citing Ward v. Internal Revenue Serv.* 2002

18  WL 1988186 at *1 (C.D.Cal. June 19, 2002)). The plaintiff has the burden of

19  establishing the court's subject matter jurisdiction, and the court presumes lack of

20  jurisdiction until the plaintiff demonstrates otherwise. *Kokkonen v. Guardian Life Ins.*

21  *Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221,

22  1225 (9th Cir. 1989).

23   **B.    Fed.R.Civ.P 12(b)(1) Motion to Dismiss Under The FAA**

24       Under the FAA, "an agreement in writing to submit to arbitration an existing

25  controversy arising out of such a contract, transaction, or refusal, shall be valid,

26  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

27  revocation of any contract." 9 U.S.C. § 2. Applying the FAA, courts are required to issue

28

112893.000001/899278.02

1  an order compelling arbitration of disputes where the parties have agreed to arbitrate but

2  have failed to comply with such obligation.  9 U.S. C. §§ 3, 4.  Where, as here, the

3  disputes pleaded in the complaint must be arbitrated, dismissal of the action is

4  appropriate.  *See e.g., Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir.

5  1988)*; Bosinger v. Phillips Plastics Corp.*  57 F.Supp.2d 986, 989 (S.D.Cal. 1999), *citing*

6  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

7       Federal law governs whether a particular matter is arbitrable under the parties'

8  agreement.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-405

9  (1967); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.* 473 U.S. 614, 626

10  (1985).  When asked to dismiss an action in favor of binding arbitration, a court must first

11  determine whether the parties agreed to arbitrate the dispute.  The Court's only role when

12  presented with a question of arbitrability is to determine (i) whether an arbitration

13  agreement exists; and (ii) whether the scope of the parties' dispute falls within the scope

14  of the arbitration provision.  *Filimex, L.L.C. v. Novoa Investments, L.L.C.* 2006 W.L.

15  2091661, *3 (D.Ariz. 2006), *citing Chiron Corp. v. Ortho Diagnostic Sys., Inc.* 207 F.3d

16  1126, 1130 (9th Cir. 2000).   Federal courts must order parties to proceed to arbitration if

17  there has been a "failure, neglect, or refusal" to honor an agreement to arbitrate.  *See* 9

18  U.S.C. § 4.  "As a matter of federal law, any doubts concerning the scope of arbitrable

19  issues should be resolved in favor of arbitration, whether the problem at hand is the

20  construction of the contract language itself or an allegation of waiver, delay, or the like

21  defense to arbitrability."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460

22  U.S. 1, 24-25 (1983); *Mitsubishi, supra*, 473 U.S. at 626.

23                 **III.    ARGUMENT**

24      **A.    Arbitrability Is Governed By The FAA**

25      Section 2 of the FAA, 9 U.S.C. section 2, provides as follows:

26          A written provision in any maritime transaction or a contract
27          evidencing a transaction involving commerce to settle by arbitration
        any controversy thereafter arising out of such contract or
28          transaction, or the refusal to perform the whole or any part thereof,

8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

1
2
3
4

> or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

5      The FAA applies to employment contracts, including at-will employment contracts.

6  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 299 (2002) (Employment contracts, except

7  for those covering workers engaged in transportation, are covered by the FAA).

8  Moreover, a wide variety of statutory claims, including those alleged in the present action

9  are subject to contractual arbitration.  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105,

10 110 (2001) (claims arising under California's Fair Employment and Housing Act are

11 subject to arbitration); *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 748

12 (9th Cir. 2003) (Title VII does not bar compulsory arbitration agreements); *Adkins v.*

13 *Labor Ready, Inc.*, 303 F.3d 496, 505 (4th Cir. 2002) (no conflict between FLSA and

14 FAA).

15      The reach of the FAA coincides with the breadth of the Commerce Clause to the

16 United States Constitution and applies "not only to the actual physical interstate

17 shipment of goods but also to contracts relating to interstate commerce.  *Allied-Bruce*

18 *Terminex Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).  The parties need not have

19 intended interstate activity when they entered in their agreement.  *Id.*  In *Allied-Bruce*,

20 the Court concluded that a termite-protection contract involved interstate commerce

21 because, among other things, the termite-treating and house-repairing materials used by

22 the defendant came from outside the state where the dispute arose.  *Id.* at 282.

23      Here, the Training Program, on behalf of the Trust Fund, purchases materials

24 used in education and training from outside California, and uses the U.S. Postal system

25 as well as other instrumentalities of interstate commerce in its business, such as

26 telephone services, facsimile machines, and the Internet to communicate with out-of-

27 state customers, vendors, other AGC chapters and the AGC national office. The costs of

28 materials purchases from out-of-state vendors exceed $50,000.  For example, the Trust

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

1   Fund purchases safety and other materials from AGC, a national construction trade

2   association located in Arlington, Virginia.  (Saucedo Dec. ¶6.)  In addition, the Trust

3   Fund purchases text books from publishers located throughout the United States.

4   (Saucedo Dec. ¶7.)  The Trust Fund also purchases commercial tools from national

5   retailers, such as Prexair, Inc., whose worldwide headquarters are located in Danbury,

6   Connecticut. (Saucedo Dec. ¶9.)   The Trust Fund advertises its Training Program and

7   services on the World Wide Web and utilizes U.S. Postal Service, facsimile machines

8   and the Internet to communicate with individuals and entities outside California**.**

9   (Saucedo Dec. ¶10.)

10          Furthermore, while employed by the Trust Fund, Karimy was involved in

11  transactions and activities involving interstate commerce.  As director of the Training

12  Program, Karimy purchased textbooks from publishers located throughout the United

13  States and commercial tools for the Training Program from national retailers. (Saucedo

14  Dec. ¶¶ 15, 16.)  Many such commercial tools were manufactured outside of California.

15  For example, Karimy purchased Skill brand saws that are manufactured in the state of

16  Illinois.  (Saucedo Dec. ¶16.)  Employees of the Trust Fund employees of the Trust Fund

17  attend conferences, meetings, and educational seminars outside California**.**  (Saucedo

18  Dec. ¶17.)  In July 2006, Karimy attended a Western Conference Training Directors

19  meeting in Alaska, and, in July 2007, Karimy attended a meeting in Wyoming, which

20  included individuals from AGC chapters in 15 states. (Saucedo Dec. ¶¶ 17-18.)   The

21  Agreements evidence transactions involving interstate commerce, and, as a result, the

22  FAA applies to this case.

23          **B.      The Disputes Raised In The Complaint Are Subject To Arbitration**

24          The FAA embodies a strong federal policy promoting arbitration.  *Moses H. Cone*

25  *Mem. Hosp., supra*, 460 U.S., at 24.  Consistent with the strong and liberal federal policy

26  favoring arbitration agreements, courts construing arbitration agreements must broadly

27  construe them and must resolve any ambiguities in an arbitration clause and any doubts

28  concerning the scope of arbitrable issues in favor of arbitration.  *Moses, supra,* 460 U.S.

112893.000001/899278.02

1    at 24-25.

2        The Ninth Circuit Court holds that the contractual arbitration provisions must be

3    construed liberally.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999).  A

4    plaintiff's factual allegations need only "touch matters" covered by the contract containing

5    the arbitration provision. *Id., see also Bosinger v. Phillips Plastics Corp.* 57 F.Supp.2d

6    986, 993-994 (S.D.Cal. 1999) ("arising out of" broad enough to encompass related tort

7    claims).  Similarly, other courts analyzing contractual language regarding "any disputes,"

8    have interpreted arbitration provisions broadly, holding that disputes with a significant

9    relationship to the contract are arbitrable.  *Ryan & Sons, Inc. v. Rhone Poulenc Textile,*

10   *S.A.,* 863 F.2d 315, 321 (4th Cir.1988); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d

11   840, 846 (2d Cir.1987) (any claims concerning the parties' loan agreement obligations

12   should be arbitrated); *Blinco v. Green Tree Servicing, LLC,* 400 F.3d 1308, 1312 (11th

13   Cir.2005); *see also Hornbeck Offshore Corp. v. Coastal Carriers Corp.,* 981 F.2d 752,

14   755 (5th Cir.1993).

15       The Agreements executed by Karimy require that he submit to arbitration **"any**

16   **dispute"** that may arise between Karimy and the Trust Fund related to the termination of

17   his employment, including statutory, contract, and common law claims.   The binding

18   arbitration provisions in Sections 5 and 6 of the Agreements are both clear and broad in

19   scope.  Karimy was aware of the provisions and understood their significance.  Karimy

20   executed the Agreements twice during his employment with the Trust Fund.  As part of

21   his duties and responsibilities as director, he reviewed the employee handbook, which

22   references the Agreement, and discussed Trust Fund policies and procedures as well as

23   the At-Will Employment and Arbitration Agreement with newly hired employees.

24       On February 14, 2008, Karimy filed the present action alleging that, his

25   employment was terminated because of discrimination based on his protected status in

26   violation of state and federal anti-discrimination laws.  Karimy further alleges that he

27   suffered a retaliatory termination of his employment in violation of public policy following

28   his engaging in protected "whistle blowing."  Karimy also alleges that the Trust Fund failed

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Case No. 08 CV 0297 L (CAB)

112893.000001/899278.02

1  to compensate him with overtime premiums during his employment and failed to

2  compensate him with all wages due and owing upon termination of employment.

3  Karimy's claims fall squarely within the scope of the arbitration agreement.  Accordingly,

4  an arbitrable controversy exists between the parties.

5        Any doubt as to whether a particular dispute falls within the arbitration clause is

6  generally resolved in favor of arbitration. *AT&T Technologies, Inc. v. Communications*

7  *Workers of America*, 475 U.S. 643, 650 (1986). "[A]rbitration should not be denied

8  'unless it may be said with positive assurance that the arbitration clause is not

9  susceptible of an interpretation that covers the asserted dispute.'"  *Homestake Lead Co.*

10 *of Missouri v. Doe Run Resources Corp.*,  282 F.Supp.2d 1131, 1141 (N.D.Cal. 2003),

11 *citing USA v. Warrior & Gulf,* 363 U.S. 574, (1960); *IBEW, Local No. 4 v. KTVI-TV, Inc.*,

12 985 F.2d 415, 416 (8th Cir.1993).  Here, the scope of the arbitration provision in the

13 Agreements under which he was employed by the Trust Fund is sufficiently broad to

14 encompass all employment-related claims alleged in the Complaint.  The Agreements

15 executed by Karimy bar Karimy's judicial action, because the court lacks subject matter

16 jurisdiction over his claims.  As a result, Karimy must assert his alleged claims through

17 arbitration.

18                **IV.**    **CONCLUSION**

19       Based on the foregoing, the Trust Fund respectfully requests that the court grant

20 its motion to dismiss the Complaint with prejudice.

21 DATED:  March 28, 2008            PROCOPIO, CORY, HARGREAVES &
22                                      SAVITCH LLP

23                         By:   s/ Laura B. Riesenberg
                              David P. Wolds
24                               Laura B. Riesenberg
                              Farzeen Essa
25                               Attorneys for Defendants, ASSOCIATED
                              GENERAL CONTRACTORS OF
26                               AMERICA SAN DIEGO CHAPTER, INC.
                              APPRENTICESHIP AND TRAINING
27                               TRUST FUND
                              E-Mail: dpw@procopio.com
28                                          lbr@procopio.com
                                       fe@procopio.com

12

112893.000001/899278.02