1 | ALEXANDER B. CVITAN (CSB 81746),
  | J. DAVID SACKMAN (CSB 106703),
2 | STEVEN T. NUTTER (CSB 67008), and
  | NATALIA BAUTISTA (CSB 245669), Members of
3 | REICH, ADELL & CVITAN
  | A Professional Law Corporation
4 | 3550 Wilshire Boulevard, Suite 2000
  | Los Angeles, California 90010-2421
5 | Telephone: (213) 386-3860
  | Facsimile: (213) 386-5583
6 | email: alc@rac-law.com; jds@rac-law.com; nataliab@rac-law.com

7 | Attorneys for Plaintiff

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | SOHIL KARIMY, | NO. 08-CV-00297-L-CAB |
| 12 | Plaintiff, | |
| 13 | vs. | PLAINTIFF SOHIL KARIMY'S OPPOSITION TO DEFENDANT ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO CHAPTER, INC. APPRENTICESHIP & TRAINING TRUST FUND'S MOTION TO DISMISS WITH PREJUDICE |
| 14 | ASSOCIATED GENERAL CONTRACTORS OF AMERICA – | |
| 15 | SAN DIEGO CHAPTER, INC., APPRENTICESHIP & TRAINING | |
| 16 | TRUST FUND, | |
| 17 | Defendants. | |
| 18 | | Date: June 23, 2008 |
| 19 | | Time: 10:30 a.m. Ctrm: 14 (Fifth Floor) |

20

21

22 | Plaintiff, Sohil Karimy, OPPOSES the Motion to Dismiss with Prejudice of

23 | Defendant ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN

24 | DIEGO CHAPTER, INC. APPRENTICESHIP & TRAINING TRUST FUND. This

25 | Opposition is supported by the following Memorandum of Points and Authorities,

26 | the Declarations of Sohil Karimy and Alexander B. Cvitan, and all of the pleadings

27 | in this case.

28

158605.1

# TABLE OF CONTENTS

**Page (s)**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A.    THERE IS NO VALID ARBITRATION AGREEMENT . . . . . . . . . . .6

        1.    <u>Defendant Did Not Agree to the Arbitration
            Agreement it Is Attempting to Impose upon Karimy</u> . . . . . . . .  7

        2.    <u>No Arbitration Procedure Was Incorporated by
            Reference into the Agreement Karimy Signed</u> . . . . . . . . . . . .  7

    B.    THE ARBITRATION AGREEMENT IS UNENFORCEABLE
        AS UNCONSCIONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

        1.    <u>Procedural Unconscionability</u> . . . . . . . . . . . . . . . . . . . . . . . .  11

        2.    <u>Substantive Unconsionability</u> . . . . . . . . . . . . . . . . . . . . . . . . .  13

    C.    IF THE ARBITRATION AGREEMENT WERE
        ENFORCEABLE, THE PROPER REMEDY WOULD
        NOT BE TO DISMISS THE ACTION, BUT TO REFER
        THE ARBITRABLE DISPUTES, AND STAY THE
        REMAINING CLAIMS TO ARBITRATION . . . . . . . . . . . . . . . . . .  15

        1.    <u>Only Some of the Claims Are Arbitrable.</u> . . . . . . . . . . . . . . .  15

        2.    <u>The Proper Procedure on Finding Arbitrability Is
            To Refer Those Claims to Arbitration and Stay
            The Action, Not to Dismiss the Entire Action</u> . . . . . . . . . . . .  17

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

# TABLE OF AUTHORITIES

**Page (s)**

## FEDERAL CASES

*Auto Stiegler, Inc. v. Little*
(2003) 540 U.S. 818, 124 S. Ct. 83, 157 L. Ed. 2d 35 . . . . . . . . . . . . . . . .  10

*Cariaga v. Local No. 1184 Laborers Intern. Union of North America,*
154 F.3d 1072 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*Davis v. O'Melveny & Myers,*
485 F.3d 1066 (9th Cir. 2007), *cert. dismissed,*
128 S.Ct. 1117 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Dumais v. American Golf Corp.,*
299 F.3d 1216 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*EEOC v. Waffle House, Inc.,*
534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) . . . . . . . . . . . .  6

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) . . . . . . . . . .  6, 16

*Floss v. Ryan's Family Steak Houses, Inc.,*
211 F.3d 306 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Hooters of America, Inc. v. Phillips,*
173 F.3d 933 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Ingle v. Circuit City Stores, Inc.,*
328 F.3d 1165 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 6, 7, 10, 11, 13, 14

*John Wiley & Sons, Inc. v. Livingston,*
376 U.S. 543, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) . . . . . . . . . . . . . . .  6

*Subway Equip. Leasing Corp. v. Forte,*
169 F.3d 324 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*United States v. Neumann Caribbean Int'l, Ltd.,*
750 F.2d 1422 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*United Steelworkers of America v. Warrior & Gulf Nav. Co.,*
363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) . . . . . . . . . . . .  6

*Wagner v. Stratton Oakmont, Inc.,*
83 F.3d 1046 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## STATE CASES

*24 Hour Fitness, Inc. v. Superior Court,*
66 Cal. App. 4th 1199, 78 Cal. Rptr. 2d 533 (1st Dist. 1998) . . . . . . . . . .  17

**Page (s)**

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
    24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000) . . . . . . . . . . . . . . 11

*Baker v. Osborne Development Corp.,*
    159 Cal. App. 4th 884, 71 Cal.Rptr.3d 854 (4th Dist. 2008) . . . . . . . . . . . . 9

*Chan v. Drexel Burnham Lambert, Inc.,*
    178 Cal. App. 3d 632, 223 Cal. Rptr. 838 (1986) . . . . . . . . . . . . . . . . . . . 8

*Discover Bank v. Superior Court ,*
    36 Cal. 4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005) . . . . . . . . . 10, 13

*Engalla v. Permanente Medical Group, Inc.,*
    (1997) 15 Cal. 4th 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Estate of McNamara*
    119 Cal.App.2d 744, 747, 260 P.2d 182 (1953) . . . . . . . . . . . . . . . . . . . . . 8

*Fitz v. NCR Corp.,*
    118 Cal. App. 4th 702, 13 Cal.Rptr.3d 88 (2004) . . . . . . . . . . . . . . . . . . . 13

*Gentry v. Superior Court,*
    42 Cal. 4th 443, 64 Cal.Rptr.3d 773 (2007) . . . . . . . . . . . . . . . . . . . . . . . 12

*Graham v. Scissor-Tail, Inc.,*
    28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981) . . . . . . . . . . . . . . 13

*Harper v. Ultimo,*
    113 Cal. App. 4th 1402, 7 Cal.Rptr.3d 418 (4th Dist. 2003) . . . . . . . . . . . 13

*Kinney v. United HealthCare Services, Inc.,*
    70 Cal. App. 4th 1322, 83 Cal. Rptr. 2d 348 (1999) . . . . . . . . . . . . . . . . . 11

*Little v. Auto Stiegler, Inc.*
    (2003) 29 Cal. 4th 1064, 130 Cal. Rptr. 2d 892,
    63 P.3d 979 ( Little ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mercuro v. Sup.Ct. (Countrywide Secur. Corp.),*
    96 Cal. App. 4th 167, 116 Cal. Rptr. 2d 671 (2002) . . . . . . . . . . . . . . . . . 14

*Metters v. Ralphs Grocery Co.,*
    161 Cal. App. 4th 696, 74 Cal.Rptr.3d 210 (4th Dist. 2008) . . . . . . . . . . . . 9

*People v. Egan,*
    141 Cal. App. 3d 798, 190 Cal. Rptr. 546 (1983),
    *citing Estate of McNamara*, 119 Cal. App. 2d 744,
    260 P.2d 182 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Perdue v. Crocker National Bank,*
    (1985) 38 Cal. 3d 913 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Slaught v. Bencomo Roofing Co.,*
    25 Cal.App.4th 744, 748, 30 Cal.Rptr.2d 618, 621 (1994) . . . . . . . . . . . . . 8

**Page (s)**

*Stirlen v. Supercuts, Inc.,*
   51 Cal. App. 4th 1519, 60 Cal. Rptr. 2d 138
   (Cal.App. 1 Dist.,1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

## FEDERAL STATUES

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Federal Arbitration Act, 9 U.S.C. §§ 1-16  . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Federal Arbitration Act, 9 U.S.C. §§ 3  . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Fair Labor Standards Act, 29 U.S.C. § 216 (b) . . . . . . . . . . . . . . . . . . . . . . . . .  16

## CALIFORNIA LABOR CODE

California Labor Code §203  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

California Labor Code §510  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

California Business and Profession Code §17200 et seq  . . . . . . . . . . . . . . . . . . .  16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff, Sohil Karimy, (hereafter "Plaintiff" or "Karimy") filed this action on February 14, 2008 against his former employer Associated General Contractors of America San Diego Chapter, Inc., Apprenticeship & Training Trust Fund (hereafter, "Defendant" or "AGC Trust") for violation of the Civil Rights Act, intentional employment discrimination, violation of the California Fair Employment and Housing Act, and wrongful discharge in violation of public policy. Plaintiff also alleged causes of action not related to his termination, including claims relating to Defendant's failure to pay overtime compensation, and failure to pay wages upon termination. Plaintiff alleges the above acts constitute unfair business practices in violation of California Business and Professions §17200 et seq.

Defendant responded to the complaint with this Motion to Dismiss, under Fed. R. Civ. P. 12(b)(1), "on the ground that Karimy and the Trust Fund contracted to resolve the disputes set forth in the present action through binding arbitration" and alternatively as a "non-enumerated" Rule 12(b) motion to dismiss "for failure to exhaust non-judicial remedies." The motion is based entirely on the assertion that a valid arbitration agreement requires Karimy to arbitrate all of the disputes alleged in the complaint.

First of all, there is no enforceable agreement to arbitrate. The AGC Trust never signed the agreement it attempts to use against Karimy, and no arbitration procedure was incorporated by reference. Even if there were an arbitration agreement, it would be unenforceable as unconscionable under California contract law. Finally, even if the arbitration agreement existed and was enforceable, it only covers the claims relating to termination, and the proper procedure would not be to dismiss, but to stay the action, pending arbitration.

1

2

## II. FACTS

3      Plaintiff was employed by Defendant as a Coordinator from August 2003

4  through April 2006 and as a Director of Operations and Education from April 2006

5  through September 2007, when he was wrongfully terminated. [Declaration of Sohil

6  Karmy ¶ 2 (hereafter, Karimy Dec.)]. Plaintiff's wrongful termination resulted from

7  complaints he made to Defendant related to Defendant's fraudulent activities as well

8  as from discrimination against Plaintiff as a result of his ancestry.

9      In November 2005, while Plaintiff was a Coordinator, he was presented with

10 an "At-Will Employment and Arbitration Agreement" ("Employment Agreement").

11 [Karimy Dec. ¶ 3, Exhibit E, at 7]. At the end of a staff meeting, Karimy's

12 supervisor, Pete Saucedo, gave all of the employees the "Employment and

13 Arbitration Agreement," as they were exiting the staff meeting. [Karimy Dec. ¶ 3].

14 Saucedo told the employees that there was a new revision to an employment

15 document and that the employees had to sign it and hand it back to him immediately.

16 [Id.]. Mr. Karimy had less than ten seconds to sign the document and return it to

17 Saucedo. [Id.]. In June 2006, Plaintiff was presented with an identical Employment

18 Agreement, except that the June 2006 Employment Agreement acknowledged

19 Plaintiff's new position as a Director of Operations and Education. [Karimy Dec. ¶ 4,

20 Exhibit F, at 10]. Saucedo told Karimy that he had to sign the document again

21 because Mr. Karimy's title had changed. [Karimy Dec. ¶ 4]. As in 2005, Karimy was

22 provided with the Employment Agreement at the end of a staff meeting and was

23 only provided a few seconds to sign and return it to Saucedo. [Id.].

24      Karimy was asked to sign these Employment Agreements in order to continue

25 his employment with Defendant. [Karimy Dec. ¶ 5]. When Karimy was later given

26 copies, they were not executed by the AGC Trust. [Id.].

27      Section 5 of the Employment Agreement provides, in relevant part, as

28 follows:

1    "Employee and the Trust Fund agree that in the event Employee's
2    employment is terminated (either by the Trust Fund or the Employee) any
3    dispute that may arise between them relating to such termination of
4    employment (including, without limitation, any federal or state statute,
5    Title VII of the Civil Rights Act of 1964, as amended, the California Fair
6    Employment and Housing Act, any statute or provision relating to
7    employment discrimination and/or employment rights, the federal or any
8    state constitution and/or any public policy) will be determined by
9    arbitration and not by a lawsuit or resort to court process . . . The
10   arbitration of issues relating to the termination of Employee's employment
11   will be submitted pursuant to the ***Trust Fund's employment arbitration***
12   ***rules and procedures which are in effect on the date of termination***. The
13   employment arbitration rules and procedures are available from the Trust
14   fund on request, and are incorporated by reference . . ." (emphasis added).

16   In its Motion to Dismiss, the AGC Trust fails to address any of the defects in
17   the Agreements, or the circumstances surrounding Karimy signing them.

19   First, the employment arbitration Rules and Procedures were not attached to
20   the Agreement. [Karimy Dec. ¶ 6]. Defendant never provided the arbitration rules
21   and procedures to Plaintiff despite Karimy's repeated requests for them. [Id.]. In
22   fact, Plaintiff never saw a copy of the referenced Rules and Procedures until after he
23   was terminated, and not until his attorney obtained them. [Karimy Dec. ¶ 6;
24   Declaration of Alexander B. Cvitan ¶¶ 2-5 (hereafter, Cvitan Dec.)].
25   Second, the arbitration Rules and Procedures referred to in the Employment
26   Agreement and purportedly incorporated by reference were not fully in existence at
27   the time Plaintiff signed the Employment Agreement. The Rules and Procedures
28   finally obtained by Karimy's attorney on January 15, 2008 consisted of two parts, the

1  first is a document dated December 15, 1998, signed by AGC Trust representatives

2  [Cvitan Dec. Exh. D, at 12]. This document, in the first paragraph, provides that the

3  Defendant "Reserves the right to revise these arbitration rules and procedures in the

4  future as it deems necessary." [Cvitan Dec. Exh. D, at 12]. This document also

5  states that "any controversy concerning termination of employment shall be settled

6  by arbitration administered by JAMS/Endispute under the JAMS/Endispute

7  Arbitration Rules and Procedures for Employment Disputes, as may be amended or

8  changed from time to time." [Cvitan Dec. Exh. D, at 12]. The JAMS Rules and

9  Procedures in existence at the time of Karimy's termination became effective on

10  March 26, 2007, almost ten months after Karimy signed the Employment

11  Agreement. [Cvitan Dec. Exh. D at 13]. Thus, even if the AGC had given Karimy

12  the Rules and Procedures when he signed the Employment Agreements, they would

13  not have been the ones in effect at the time of Karimy's termination.

14        Third, without the Rules and Regulations, Karimy could not understand what

15  arbitration entailed and the full ramifications of signing the agreement. [Karimy

16  Dec. ¶ 7]. This is precisely the reason that he continuously requested the Rules and

17  Procedures, but they were never given to him. [Id.]. During approximately the last

18  four months of his employment with Defendant, Saucedo instructed Plaintiff to

19  provide the Employment and Arbitration Agreement to new hires. [Karimy Dec. ¶

20  8]. However, neither Saucedo, nor anyone else, ever instructed Plaintiff to explain

21  the contents of these documents to any new hire, nor could he have since he did not

22  fully understand the contents. [Id.] In any event, Karimy never gave the document

23  to any new hire because no one new was hired during the last four months of his

24  employment with Defendant. [Id.]

25        Fourth, Mr. Karimy was required to sign the agreements immediately in order

26  to continue his employment with Defendant in 2005 and again in 2006. [Karimy

27  Dec. ¶¶ 3-5]. Plaintiff was not told that he would read the Agreements before he

28  signed them, nor was he given an opportunity to meaningfully review the

1  Agreements or the purportedly incorporated Rules and Procedures prior to signing
2  the Agreements. [Karimy Dec. ¶¶ 5-6]. Plaintiff was not given an opportunity to
3  opt-out of the arbitration provision. [Karimy Dec. ¶ 5]. As previously mentioned,
4  even if he had been given such opportunity, this would not have made a difference,
5  as the Rules and Procedures in effect when Plaintiff signed the Agreements were not
6  the same Rules and Procedures at the time of his termination.

7          Fifth, the arbitration provision allows Defendant to unilaterally modify, alter,
8  or change the rules and procedures as it wished. [Karimy Dec. Exh. E, at 7 and
9  Exh. F, at 10, Section 5]. Between the date that the Employment Agreements were
10 signed and the date that Plaintiff was terminated, Defendant could have modified,
11 altered, or changed its arbitration rules and procedures to the detriment of Plaintiff,
12 without Plaintiff's control, consent, or even Plaintiff's knowledge.

13         Finally, the arbitration provision only provides for the arbitration of claims
14 likely to be brought by employees. For example, the only claims that are subject to
15 arbitration are those claims relating to the termination of an employee, including
16 claims for wrongful termination or violation of employment rights. [Karimy Dec.
17 Exh. E, at 7 and Exh. F, at 10, Section 5]. The arbitration provision implicitly
18 excludes all other claims, which are claims that the Defendant is more likely to
19 bring, such as claims for injunctive or other equitable relief for intellectual property
20 violations; and unfair competition arising from the use or unauthorized disclosure of
21 trade secrets or confidential information. Indeed, the Defendant's attorney sent
22 Karimy a demand letter on September 27, 2007, advising him that he was required to
23 return Defendant's property and reminding him of purported obligations under the
24 California Trade Secrets Act and a Confidentiality Agreement he had signed
25 [Karimy Dec. Exh G, at 12]. According to the Employment Agreement, the AGC
26 Trust would be free to file a lawsuit regarding these matters, rather than to arbitrate
27 them.

28

1

III. ARGUMENT

2

3  A.    THERE IS NO VALID ARBITRATION AGREEMENT

4

5        We do not dispute that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, applies

6  to enforce any valid arbitration agreement.  However, it must first be determined

7  whether there *is* a valid arbitration agreement.

8

9        "It is a settled principle of law that 'arbitration is a matter of contract.'

10       *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S.

11       574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Federal law 'directs

12       courts to place arbitration agreements on equal footing with other

13       contracts.' *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct.

14       754, 151 L.Ed.2d 755 (2002).  Arbitration agreements, accordingly, are

15       subject to all defenses to enforcement that apply to contracts generally.

16       See 9 U.S.C. § 2 (2002). To evaluate the validity of an arbitration

17       agreement, federal courts 'should apply ordinary state-law principles

18       that govern the formation of contracts.' *First Options of Chicago, Inc.*

19       *v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985

20       (1985)."

21

22  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).  *See also,*

23  *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d

24  898 (1964) ("The duty to arbitrate being of contractual origin, a compulsory

25  submission to arbitration cannot precede judicial determination that the ... agreement

26  does in fact create such a duty");  *Cariaga v. Local No. 1184 Laborers Intern. Union*

27  *of North America*,  154 F.3d 1072, 1074 (9th Cir. 1998) (existence of arbitration

28  agreement in construction subcontract determined under California law).  The

1 determination as to whether there is an arbitration agreement must therefore be
2 decided under California law governing employment contracts in general.

4    1. <u>Defendant Did Not Agree to the Arbitration Agreement it Is Attempting to</u>
5    <u>Impose upon Karimy</u>.

7    Defendant bases its motion here on the Employment Agreement signed by
8 Karimy, allegedly incorporating arbitration rules in another document.  However,
9 the agreement Defendant seeks to enforce against Karimy, <u>is not signed on</u>
10 <u>Defendant's behalf</u>.  There is no evidence that Defendant ever signed this
11 agreement. [Karimy Dec. ¶ 5; Exh. E, at 8 and F, at 11].
12    "It is a settled principle of law that 'arbitration is a matter of contract.'" *Ingle*,
13 328 F.3d 1165, 1170, *quoting from Warrior Gulf, supra*.  Thus, there can be no
14 contract formed if there is a lack of mutual assent.  Even if a contract is formed,
15 Defendant's failure to sign the Employment Agreement makes it unconscionable, as
16 discussed more fully below.

18    2. <u>No Arbitration Procedure Was Incorporated by Reference into the</u>
19    <u>Agreement Karimy Signed</u>.

21    The Agreement signed by Karimy (but not signed by Defendant) did not
22 provide rules for arbitration.  Instead, it referenced another document providing
23 those rules:

25    The arbitration of issues relating to the termination of Employee's
26    employment will be submitted pursuant to the Trust Fund's employment
27    arbitration rules and procedures which are in effect on the date of
28    termination.  The employment arbitration rules and procedures are

1    available from the Trust Fund on request, and are incorporated by

2    reference..." [Karimy Dec., Exhibits E and F, Section 5].

3

4         Whether or not the "Trust Fund's employment arbitration rules and

5    procedures" are incorporated by reference, must be determined under California law.

6    *See Cariaga*, 154 F.3d 1072, 1074 (whether subcontract incorporated arbitration

7    provision of collective bargaining agreement determined under California law, not

8    federal law).

9

10        "Under California law, for one document to incorporate another

11        document by reference, "[t]he reference to the incorporated document

12        must be clear and unequivocal and the terms of the incorporated

13        document must be known or easily available to the contracting parties."

14        *Slaught v. Bencomo Roofing Co.*, 25 Cal.App.4th 744, 748, 30

15        Cal.Rptr.2d 618, 621 (1994) (citations omitted)." [Id.].

16

17        The reference to the incorporated document must be clear and unequivocal,

18    the reference must be called to the attention of the other party and he must consent

19    thereto, and the terms of the incorporated document must be known or easily

20    available to the contracting parties. *Chan v. Drexel Burnham Lambert, Inc.* 178 Cal.

21    App. 3d 632, 641, 223 Cal.Rptr. 838 (1986). For incorporation by reference to be

22    effective, it is necessary that the incorporated document be clearly identified and in

23    existence at the time of incorporation. *People v. Egan* 141 Cal.App.3d 798, 803 190

24    Cal.Rptr. 546 (1983), *citing Estate of McNamara* 119 Cal.App.2d 744, 747, 260

25    P.2d 182 (1953).

26        Here, the Rules and Procedures allegedly incorporated by reference were not

27    known or easily available to Mr. Karimy. First, while the AGC Trust adopted the

28    JAMS rules in 1998, the actual JAMS rules applicable to the termination were not in

1  existence at the time they were allegedly incorporated by reference. The actual
2  Rules and Procedures in effect at the time Karimy was terminated only became
3  effective on March 26, 2007. [Cvitan Dec. ¶ 5, Exh. D, at 13]. As such, these rules
4  could not have been known to Karimy to be validly incorporated by reference.

5      In a similar situation, a California Court of Appeal recently found that
6  arbitration procedures could not be incorporated by reference, where "the arbitration
7  provisions were not readily available to the plaintiffs, in that the Warranty Booklet
8  was not provided before or at the time the Builder's Application was presented for
9  signature just before the close of escrow." *Baker v. Osborne Development Corp.*,
10  159 Cal.App.4th 884, 896, 71 Cal.Rptr.3d 854, 863 (4th Dist. 2008).

11      Most important is the fact that **the arbitration rules were <u>never</u> made**
12  **available to Karimy, despite his repeated requests, and were only made**
13  **available to his attorney after several requests**. [Karimy Dec. ¶ 6; Cvitan Dec. ¶¶
14  3-4]. Karimy requested the Rules and Procedures on at least four occasions from his
15  supervisor, Pete Saucedo, who told Karimy that Saucedo would obtain the rules
16  from the attorney's office and give them to him. However, Saucedo never did.
17  [Karimy Dec. ¶ 6].

18      Where "the agreement to arbitrate was not contained in an employment
19  contract, where it might have been expected, but in a form" in a separate document,
20  not easily available, it cannot be said to have been validly incorporated by reference.
21  *Metters v. Ralphs Grocery Co.*, 161 Cal.App.4th 696, 703, 74 Cal.Rptr.3d 210, 215
22  (4th Dist. 2008).

23      Defendant is asking this Court to enforce arbitration procedures against
24  Karimy, which it failed and refused to make available to him, through an agreement
25  which it did not even sign itself. This is not only contrary to standard law of
26  contract formation and interpretation, it is unconscionable. We now turn to that
27  issue.

28

1  B.    THE ARBITRATION AGREEMENT IS UNENFORCEABLE AS
2         UNCONSCIONABLE

3

4         The doctrine of "unconscionability" is a general contract defense, which may
5  be applied consistent with the FAA to defeat a contractual claim for arbitration.
6  "Because unconscionability is a generally applicable defense to contracts, California
7  courts may refuse to enforce an unconscionable arbitration agreement." *Ingle*, 328
8  F.3d 1165, 1170.  The doctrine of unconscionability under California contract law
9  has been summarized by the California Supreme Court thus:

10

11        "To briefly recapitulate the principles of unconscionability, the doctrine
12        has ' "both a 'procedural' and a 'substantive' element," the former
13        focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining
14        power, the latter on " 'overly harsh' " 'or " 'one-sided' " results.'
15        [Citation omitted.] The procedural element of an unconscionable
16        contract generally takes the form of a contract of adhesion, ' "which,
17        imposed and drafted by the party of superior bargaining strength,
18        relegates to the subscribing party only the opportunity to adhere to the
19        contract or reject it." ' ... [¶] Substantively unconscionable terms may
20        take various forms, but may generally be described as unfairly
21        one-sided." ( *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071,
22        130 Cal.Rptr.2d 892, 63 P.3d 979 ( Little ), *cert. den. sub nom. Auto*
23        *Stiegler, Inc. v. Little* (2003) 540 U.S. 818, 124 S.Ct. 83, 157 L.Ed.2d
24        35.)"

25

26  *Discover Bank v. Superior Court* , 36 Cal.4th 148, 160, 30 Cal.Rptr.3d 76, 113 P.3d
27  1100 (2005).  There is thus a "sliding scale" between "procedural" and "substantive"
28  unconscionability.  The more substantively oppressive the contract term, the less

1  evidence of procedural unconscionability is required to come to the conclusion that

2  the term is unenforceable, and vice versa.  *See Armendariz v. Foundation Health*

3  *Psychcare Services, Inc*. 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669  (2000).

4  The Ninth Circuit has held that the principles of unconscionability under California

5  law apply to contentions by employers that disputes under an employment

6  agreement must be arbitrated. *Ingle*, 328 F.3d 1165, 1170.

7

8      1.  Procedural Unconscionability

9

10     Procedural unconscionability focuses on the factors of surprise and

11  oppression.  "The oppression component arises from an inequality of bargaining

12  power ... and an absence of real negotiation or a meaningful choice on the part of the

13  weaker party." *Kinney v. United HealthCare Services, Inc.*, 70 Cal.App.4th 1322,

14  1329, 83 Cal.Rptr.2d 348 (1999).  In *Kinney*, the Court indicated that procedural

15  unconscionability is clearly present when an employer provides an agreement to its

16  employees and the employees are required to acknowledge his or her consent to its

17  terms, including an arbitration provision, as a condition of continued employment

18  with the company. [Id.].  The Court indicated that in these circumstances, it is clear

19  that the employee has no opportunity to negotiate regarding the terms of the

20  agreement. [Id.]. citing *Engalla v. Permanente Medical Group, Inc*., (1997) 15

21  Cal.4th 951,  984-985; *Perdue v. Crocker National Bank*, (1985) 38 Cal.3d 913,

22  924-925.

23     An agreement is procedurally unconscionable where  "The agreement is a

24  prerequisite to employment, and job applicants are not permitted to modify the

25  agreement's terms-they must take the contract or leave it." *Ingle*, 328 F.3d 1165,

26  1171.  An arbitration clause in an employment agreement, presented as a take-it-or-

27  leave-it proposition has been held to be unconscionable even where "there are no

28  factors of adhesion such as surprise or concealment. . . . [and the employer]  not only

1  gave ample notice of the program and its terms, but also made efforts to have

2  employment lawyers and human-resource personnel available to answer questions.

3  There is no evidence (although the case did not progress very far) of undue pressure

4  put on employees." *Davis v. O'Melveny & Myers*,  485 F.3d 1066, 1073 (9th Cir.

5  2007), *cert. dismissed*, 128 S.Ct. 1117 (2008).  In fact, procedural unconscionability

6  is generally presumed by the courts in contracts between individual employees and

7  their employer, because of "the inequality between employer and employee and the

8  economic power that the former wields over the latter . . . ." *Gentry v. Superior*

9  *Court*,  42 Cal.4th 443, 472, 64 Cal.Rptr.3d 773, 795 (2007).

10       Here, Karimy was presented in 2005 and in 2006 with the Employment

11  Agreement in order to continue his employment with Defendant. [Karimy Dec. ¶ 5].

12  Karimy was not provided an opportunity to review the Agreement, or referenced

13  Rules and Procedures prior to signing the agreement and was asked to sign

14  immediately.  [Id.].  Despite Karimy's numerous requests to obtain the Rules and

15  Procedures, these were never provided to him. [Karimy Dec. ¶ 6].  As previously

16  stated this would not have made a difference since the Rules and Procedures in

17  existence at the time Karimy signed the agreement were not the ones in effect at the

18  time of his termination.

19       Defendant seems to argue that Karimy must be bound to the arbitration

20  provisions he was never provided, because of the high level of his position with

21  Defendant, and the fact that he was required himself to present the same

22  Employment Agreement to other employees.[1] However, "The suggestion that a

23  contract or clause cannot be unconscionable if it is accepted by a knowledgeable

24  party has been repudiated by our Supreme Court." *Stirlen v. Supercuts, Inc.*,  51

25  Cal.App.4th 1519, 1534, 60 Cal.Rptr.2d 138, 147 (Cal.App. 1 Dist.,1997), *citing*,

---

27  [1]/ Actually, this requirement was not imposed on him until just before his
28  termination, and he never had the occasion to give the Employment Agreement to
    any other person.  [Karimy Dec. ¶ 8].

1  *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165

2  (1981).

3      Procedural unconscionability has also been noted where arbitration provisions

4  incorporate separate rules and procedures and the employee is not provided a copy

5  of the rules in advance, because the employee is forced to go to another source to

6  learn the full ramifications of the arbitration agreement. *See Fitz v. NCR Corp*. 118

7  Cal.App.4th 702, 721, 13 Cal.Rptr.3d 88 (2004) (noting but not resolving issue);

8  *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1405, 7 Cal.Rptr.3d 418 (4th Dist. 2003)

9  (procedural unconscionability found where contracts referred to arbitration rules

10 which were not attached).

11     There can be no question that the agreement Defendant is attempting to

12 enforce here is procedurally unconscionable.  Where, as here, the Employment

13 Agreement is presented to Karimy on an adhere- or-reject basis, the Court should

14 conclude that the agreement is procedurally unconscionable.  See *Ingle*, 328 F.3d

15 1165, 1172.

16

17     2.  Substantive Unconsionability

18

19     "Substantively unconscionable terms may take various forms, but may

20 generally be described as unfairly one-sided." *Discover Bank*, 36 Cal.4th 148, 160.

21

22     "[U]nder California law, a contract to arbitrate between an employer

23     and an employee, such as the one we evaluate in this case, raises a

24     rebuttable presumption of substantive unconscionability. Unless the

25     employer can demonstrate that the effect of a contract to arbitrate is

26     bilateral-as is required under California law-with respect to a particular

27     employee, courts should presume such contracts substantively

28     unconscionable." *Ingle*,  328 F.3d 1165, 1174.

1    Defendant here can not demonstrate that the contract is bilateral.  First of all,
2  it didn't even sign the Employment Agreement itself, so that the entire "agreement"
3  is one-sided.  It is doubtful whether the arbitration agreement could be enforced at
4  all against Defendant in these circumstances.  Even if the agreement could be
5  enforced against it, the terms are one-sided on their face.

6    An arbitration agreement is substantively unconscionable where it compels
7  arbitration of claims employees are most likely to bring against the employer (e.g.,
8  contract claims, tort claims, discrimination claims, etc.), and exempts from
9  arbitration claims the employer is most likely to bring against its employees (e.g.,
10  injunctive or other equitable relief for intellectual property violations, unfair
11  competition and the use or unauthorized disclosure of trade secrets or confidential
12  information).  *Mercuro v. Sup.Ct. (Countrywide Secur. Corp.)* 96 Cal.App.4th 167,
13  175–176, 116 Cal.Rptr.2d 671 (2002).

14    Here, the only claims subject to arbitration are those "relating to such
15  termination  of employment (including, without limitation, any federal or state
16  statute, Title VII of the Civil Rights Act of 1964, as amended, the California Fair
17  Employment and Housing Act, any statute or provision relating to employment
18  discrimination and/or employment rights, the federal or any state constitution
19  and/or any public policy)."  [Karimy Dec. Exh. E and F, Section 5].  By their nature,
20  these are claims that can only be brought by employees against employers.  We
21  cannot imagine any claims of Defendant which would be arbitrable under this
22  agreement.[2/]

23    The Ninth Circuit (applying California law) has held that a provision giving
24  the employer the unilateral right to terminate or modify the arbitration agreement
25  also renders it substantively unconscionable. *Ingle*, 328 F3d 1165, 1179 (unilateral

26  ———————————

27  [2/]  For example, Karimy also agreed to certain confidentiality provisions. [Karimy
28  Dec. ¶ 9].  Violation of those provisions could lead to claims by Defendant against
Karimy.  However, those claims are *not* subject to arbitration.

…

1 right of employer, not employee, to alter or terminate agreement makes it

2 substantively unconscionable). Other courts are in accord. *See Dumais v. American*

3 *Golf Corp.* 299 F3d 1216, 1219 (10th Cir. 2002); *Floss v. Ryan's Family Steak*

4 *Houses, Inc.* 211 F3d 306, 315–316 (6th Cir. 2000); *Hooters of America, Inc. v.*

5 *Phillips* 173 F3d 933, 939 (4th Cir. 1999).

6      Here, the arbitration provision allows for Defendant to unilaterally modify,

7 alter, or change the rules and procedures as it wished. [Karimy Dec. Exh. E and F,

8 Section 5]. The arbitration provision itself indicates that the arbitration of issues

9 relating to the termination of Employee's employment will be submitted pursuant to

10 the ***Defendant's employment arbitration rules and procedures which are in effect***

11 ***on the date of termination***. Those rules are adopted at the discretion of the Trustees

12 of the Defendant. [Karimy Dec. Exh. E and F, Section 5]. Between the date that the

13 agreements were signed and the date that Plaintiff was terminated, Defendant could

14 have modified, altered, or changed its arbitration rules and procedures to the

15 detriment of Plaintiff, without Plaintiff's control, consent, or even Plaintiff's

16 knowledge. In fact the Trustees did so: the arbitration rules applicable here were

17 issued *after* the Employment Agreement was signed. [Cvitan Dec. ¶ 5, Exh. D, at

18 13].

19      The arbitration provisions Defendant seeks to enforce here, if they exist at all,

20 are procedurally and substantively unconscionable, and cannot be enforced.

21

22 C.     IF THE ARBITRATION AGREEMENT WERE ENFORCEABLE, THE

23        PROPER REMEDY WOULD NOT BE TO DISMISS THE ACTION, BUT

24        TO REFER THE ARBITRABLE DISPUTES, AND STAY THE

25        REMAINING CLAIMS TO ARBITRATION

26

27     1. Only Some of the Claims Are Arbitrable.

28

1    Plaintiff maintains that none of the claims brought by him should be subject to

2  arbitration because the arbitration provision is invalid and unenforceable. However,

3  should this Court find the arbitration provision enforceable, Plaintiff should not be

4  ordered to arbitrate his third, fifth, sixth, and eighth claims for relief, as these claims

5  are not related to Plaintiff's termination. "[A] party can be forced to arbitrate only

6  those issues it specifically has agreed to submit to arbitration, . . . ." *First Options of*

7  *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985

8  (1995).

9    Plaintiff's third and fifth claim for relief are brought under the Fair Labor

10  Standards Act and California Labor Code §510, respectively, and relate to

11  Defendant's failure to pay overtime.  Plaintiff contends that he worked over 8 hours

12  in a day and/or over 40 hours in a week and was not compensated at all for the

13  overtime hours worked.  Because these claims are unrelated to Plaintiff's

14  termination, even if the arbitration provision was deemed enforceable, these claims

15  are not arbitrable, under the plain terms of the agreement Defendant invokes here.

16    Plaintiff's sixth claim for relief, brought under California Labor Code §203,

17  arises out of Defendant's failure to pay wages upon termination, including overtime

18  wages and unpaid vacation, due and owing.  Thus, this is also a wage and hour

19  claim.

20    Plaintiff's eighth claim for relief is for unfair business practices and is brought

21  under Business and Professions Code §17200 et seq.  This claim arises under the

22  same facts that the third claim for relief and therefore, is unrelated to Plaintiff's

23  termination.

24    As discussed, Plaintiff's position is that the arbitration provision is

25  unenforceable and that all of the claims must be litigated.  However, if this Court

26  finds that the arbitration provision is enforceable, then because Plaintiff's wage and

27  hour claims do not fall within the claims that must be arbitrated under the arbitration

28  provision, this Court should proceed with the nonarbitrable claims or should stay

1 litigation of all claims pending the outcome of the arbitration.

2

3      2.  <u>The Proper Procedure on Finding Arbitrability Is to Refer Those Claims to</u>

4 <u>Arbitration and Stay the Action, Not to Dismiss the Entire Action</u>.

5

6      A party to a lawsuit pending in either state or federal court may seek a stay of

7 the action pending arbitration of one or more issues raised in such litigation. 9 USC

8 § 3; see *Wagner v. Stratton Oakmont, Inc.* 83 F3d 1046, 1048 (9th Cir. 1996);

9 *Subway Equip. Leasing Corp. v. Forte* 169 F3d 324, 329 (5th Cir. 1999).  Where the

10 action sought to be stayed involves both arbitrable and nonarbitrable disputes, the

11 district court has discretion either to proceed with the nonarbitrable claims or to stay

12 litigation of all claims pending the outcome of the arbitration. *United States v.*

13 *Neumann Caribbean Int'l, Ltd.* 750 F2d 1422, 1426 (9th Cir. 1985).  In a case in

14 which fewer than all of the claims against a given defendant are subject to an

15 arbitration agreement, or in which part of the relief sought is beyond the arbitrator's

16 power to grant, it makes sense to require the party seeking to enforce the arbitration

17 agreement to stay the litigation while compelling arbitration. In such cases, this

18 procedure preserves a forum for the plaintiff's non-arbitrable claims, while at the

19 same time preventing the defendant from abusing the arbitration agreement to create

20 undue delay. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 78

21 Cal.Rptr.2d 533 (1st Dist. 1998).

22      Even if all of the claims were arbitrable, which they are not, this action should

23 be stayed so the Court could monitor the arbitration, including any arguments that

24 Defendant may advance to the arbitrator that he or she should not hear the claims.

25

26                              IV.  CONCLUSION

27

28      For all the foregoing reasons, Plaintiff respectfully requests that the Court

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss with Prejudice. Plaintiff further requests that if this Court find the arbitration provision in question enforceable, that this Court proceed with the non-arbitrable claims or stay the litigation of all claims pending the outcome of the arbitration.

Respectfully Submitted,

Dated: June 9, 2008

ALEXANDER B. CVITAN,
J. DAVID SACKMAN,
STEVEN T. NUTTER, and
NATALIA BAUTISTA, Members of
REICH, ADELL & CVITAN
A Professional Law Corporation


s/ Alexander B. Cvitan
Attorney for Plaintiff Sohil Karimy
E-mail: alc@rac-law.com