ALEXANDER B. CVITAN (CSB 81746),
J. DAVID SACKMAN (CSB 106703),
STEVEN T. NUTTER (CSB 67008), and
NATALIA BAUTISTA (CSB 245669), Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860
Facsimile: (213) 386-5583
email: alc@rac-law.com; jds@rac-law.com; nataliab@rac-law.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOHIL KARIMY,<br><br>          Plaintiff,<br><br>     vs.<br><br>ASSOCIATED GENERAL<br>CONTRACTORS OF AMERICA –<br>SAN DIEGO CHAPTER, INC.,<br>APPRENTICESHIP & TRAINING<br>TRUST FUND,<br><br>          Defendants.<br>_____ | NO.  08-CV-00297-L-CAB<br><br>DECLARATION OF SOHIL KARIMY IN<br>SUPPORT OF PLAINTIFF'S<br>OPPOSITION TO DEFENDANT'S<br>MOTION TO DISMISS WITH<br>PREJUDICE<br><br>Date: June 23, 2008<br>Time:  10:30 a.m.<br>Ctrm: 14 (Fifth Floor) |

158542.1

DECLARATION OF SOHIL KARIMY

I, Sohil Karimy, declare as follows:

1.    I am a plaintiff in this action. I have personal knowledge of the following facts, and could so testify.

2.    [EMPLOYMENT] I was employed by Defendant as a Coordinator from August 2003 through April 2006 and as a Director of Operations and Education from April 2006 through September 2007, when I was wrongfully terminated.

3.    [2005 EMPLOYMENT AGREEMENT] In 2005 at the end of a staff meeting, my supervisor, Pete Saucedo, gave all of the employees the "Employment and Arbitration Agreement". This document was given to the employees as we were exiting the staff meeting. Mr. Saucedo told us that there was a new revision to an employment document and that the employees had to sign it. I was provided with less than ten seconds to sign the document and return it to Saucedo. During my employment, I was never provided with a copy of the Employment and Arbitration Agreement I signed in 2005. I only obtained a copy until after this lawsuit was filed and the Defendant provided a copy to my attorney. A true and correct copy of the Employment and Arbitration Agreement that I was asked to sign in 2005 is attached hereto as Exhibit "E" and incorporated herein by reference.

4.    [2006 EMPLOYMENT AGREEMENT] In June 2006, I was presented with an identical agreement, except that the June 2006 agreement acknowledged my position as a director of operations and education. At the end of a staff meeting, Mr. Saucedo told me that I had to sign the agreement again because my title had

1  changed.  He told me that the agreement was on a table and that as I left that I had to
2  sign it and hand it to him.  Again, I was only provided a few seconds to sign the
3  agreement and hand it to Mr. Saucedo.  Defendant did not give me a copy of the
4  Employment and Arbitration Agreement that I signed in 2006 until the day I was
5  terminated in September 2007.  The Agreement did not have the arbitration Rules
6  and Procedures attached to it.  A true and correct copy of the Employment and
7  Arbitration Agreement that I was asked to sign in 2006 is attached hereto as Exhibit
8  "F" and incorporated herein by reference.
9
10      5.      [EMPLOYMENT AGREEMENTS]  On both occasions were I was
11  presented with Employment and Arbitration Agreements, I was asked to sign them
12  in order to continue my employment with Defendant.  I was never provided an
13  opportunity to review either of these Agreements prior to signing them nor was I
14  told that I had to do so.  I was never told that I had the opportunity to opt-out of
15  arbitration.  The copy of the 2006 Employment and Arbitration Agreement that I
16  was provided, was not signed by the Defendant.  When the Defendant provided a
17  copy of the 2005 Employment and Arbitration Agreement to my attorney, I realized
18  that this Employment and Arbitration Agreement was also not signed by the
19  Defendant.
20
21      6.      [RULES AND PROCEDURES]  The Rules and Procedures referenced
22  in the Agreements were not attached to the Agreements when I signed them.  I was
23  never told that I had to read the Rules and Procedures prior to signing the
24  Agreements.  After I signed the Employment and Arbitration Agreement in 2006, I
25  asked Pete Saucedo to explain to me what I had signed.  Pete Saucedo said that it
26  was an Employment and Arbitration Agreement and that there were Rules and
27  Procedures regarding the Arbitration Agreement.  I requested the Rules and
28  Procedures from Pete Saucedo, on at least four occasions.  Pete Saucedo indicated to

1  me that the Rules and Procedures were at the attorney's office and that he would get
2  them for me.  I was never provided with the Rules and Procedures at any time during
3  my employment.  The first time that I saw the Rules and Procedures was in January
4  2008, when my attorney obtained them for me.

5

6      7.    [ARBITRATION]  I never thought that I would not be able to file a
7  lawsuit.  The Employment Agreements were never executed by the Defendant.  I
8  was never provided with the Rules and Procedures, so I did not really understand
9  how an arbitration would work.  This is why I continuously asked for the Rules and
10 Procedures.

11

12     8.    [NEW HIRES]  During approximately the last four months of my
13 employment with Defendant, Pete Saucedo instructed me to give the Employment
14 and Arbitration Agreement to any new hires.  Neither Pete Saucedo or anyone else
15 ever instructed me to explain the contents of these documents to any new hire, nor
16 could I have since I did not understand the contents.  Furthermore, I never gave the
17 document to any new hire because no one new was hired during the last four months
18 of my employment with Defendant.

19

20     9.    [CONFIDENTIALITY AGREEMENT]   In March of 2005, I was asked
21 to sign a confidentiality agreement.  On September 27, 2007, after I was terminated,
22 the Defendant's attorney sent me a letter, asking that I return Defendant's property
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

158542.1

-4-

1  and advising me that I had obligations under the California Trade Secrets Act and

2  under the Confidentiality Agreement.  A true and correct copy of Mr. Wolds letter to

3  me is attached hereto as Exhibit "G" and incorporated herein by reference.

4

5      I declare under penalty of perjury, under the laws of the United States of

6  America, that the foregoing is true and correct.

7

8      Executed on June 5½, 2008 in San Diego County, California.

9

10

11                                        By: _____
                                               Sohil Karimy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

158542.1

1

# EXHIBITS TABLE OF CONTENTS

2
                                                                      **Page (s)**

3   EXHIBIT "E"
    Employment and Arbitration Agreement signed in 2005 . . . . . . . . . . . . . . . . . . . . . 2
4
    EXHIBIT "F"
5   Employment and Arbitration Agreement signed in 2006 . . . . . . . . . . . . . . . . . . . . . 3
6   EXHIBIT "G"
    Wolds' letter dated September 27, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E



The Associated General Contractors of America – San Diego Chapter, Inc.
Apprenticeship & Training Trust
Post Office Box 927870
San Diego, CA 92192-7870
(858) 558-0739 – fax (858) 558-8941 – www.agcsd.org

## AT-WILL EMPLOYMENT AND ARBITRATION AGREEMENT

This Agreement is made by and between Associated General Contractors of America, San Diego Chapter, Inc. Apprenticeship and Training Trust Fund ("Trust Fund"), and _____ Sohil Karimy _____ ("Employee").

In consideration of the mutual promises stated in this Agreement, the Trust Fund and the Employee agree as follows:

### Section 1

The Trust Fund agrees to employ _Sohil Karim_ initially in the following job classification: _Coordinator_. Employee will receive compensation at the initial rate of $ 66K/yr per hour. It is agreed and understood that future changes in the Employee's job classification and/or compensation will not revise or modify this Agreement in any way. This Agreement will remain in effect throughout the period of the Employee's employment by the Trust Fund.

### Section 2

Employee's employment with the Trust Fund has been and is at-will. Employee may quit employment for any reason or no reason, with or without notice, and the Trust Fund may terminate Employee's employment at any time, for any reason, or for no reason, with or without notice. Employee agrees and understands that no representative of the Trust Fund has any authority to vary the understandings set forth in the previous sentence or to enter into any employment agreement with Employee for a specified period of time except by a written document signed by both the Employee and the Chairman of the Trust Fund.

### Section 3

This Agreement supersedes any and all other agreements, either oral or in writing, between the Trust Fund and the Employee with respect to the subject matter of this Agreement. This Agreement also contains all of the covenants and agreements between the Employee and the Trust Fund with respect to the subject matter of this Agreement. Both the Employee and the Trust Fund acknowledge that no representation, inducement, promise or agreement, oral or otherwise, has been made by any person which is not included in this Agreement. No agreement, statement or promise regarding the subject

Exhibit " E ", Page 6

matter of this Agreement which is not included in this Agreement shall be valid or binding on either the Trust Fund or the Employee.

## Section 4

This Agreement contains the entire agreement between the Employee and the Trust Fund with regard to at-will employment and arbitration of termination disputes. There are no oral or collateral agreements of any kind with regard to the subject matter of this Agreement. This Agreement cannot be modified except by a written document signed by the Employee and the Chairman of the Trust Fund.

## Section 5

Employee and the Trust Fund agree that in the event Employee's employment is terminated (either by the Trust Fund or the Employee) any dispute that may arise between them relating to such termination of employment (including, without limitation, any claim(s) based on common law, any federal or state statute, Title VII of the Civil Rights Act of 1964, as amended, the California Fair Employment and Housing Act, any statute or provision relating to employment discrimination and/or employment rights, the federal or any state constitution and/or any public policy) will be determined by arbitration and not by a lawsuit or resort to court process. Any contractual dispute relating to termination of employment, including claims based on breach of the at-will employment and arbitration agreement, any express or implied agreement and/or any covenant of good faith and fair dealing, must be properly initiated within one hundred eighty (180) days of termination of employment. Any dispute based on any federal or state statute, Title VII of the Civil Rights Act of 1964, as amended, the California Fair Employment and Housing Act, any statue or provision relating to employment discrimination or employment rights, the federal or any statute constitution and/or any public policy must be properly initiated within one (1) year of termination of employment. The Trust Fund and Employee agree that the time set forth for initiating arbitration of claims (180 days and 1 year) are important to avoid the loss of evidence and fading memories. In addition, the prompt assertion of claims gives both parties an opportunity to take any appropriate corrective action. Such arbitration shall be the exclusive forum for any dispute between Employee and the Trust Fund related to such termination of employment. The arbitration of issues relating to the termination of Employee's employment will be submitted pursuant to the Trust Fund's employment arbitration rules and procedures which are in effect on the date of termination. The employment arbitration rules and procedures are available from the Trust Fund on request, and are incorporated by reference. It is agreed that the arbitrator's decision will be final and binding on the Employee and the Trust Fund. This arbitration provision does not alter the at-will status of the Employee's employment.

## Section 6

**NOTICE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE CONCERNING THE TERMINATION OF YOUR EMPLOYMENT DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL.**

## Section 7

This Agreement shall be binding upon and pass to the benefit of the successor and assigns of Employee and the Trust Fund. Waiver of any breach of this Agreement by the Trust Fund will not constitute a waiver of subsequent similar or dissimilar breaches of this

2

Exhibit " E ", Page 7

Agreement, or a waiver of any of the obligations contained herein. Should any provision or part of a provision of this Agreement be found as a matter of law to be invalid, such finding

shall not have the effect of invalidating the remainder of this Agreement and the provision or part thereof as to which such finding of invalidity is made shall be interpreted so as to be ineffective only to the extent of such invalidity without invalidating the remainder of such provision or part thereof or any of the other provisions of this Agreement.

ASSOCIATED GENERAL CONTRACTORS OF
AMERICA,
SAN DIEGO CHAPTER, INC.
APPRENTICESHIP AND TRAINING
TRUST FUND

_____     _____
                   , Employee            Thomas L. Brown , Chairman

Date:  11\16\05               Date:_____

3

Exhibit " E ", Page 8

EXHIBIT F



ASSOCIATED GENERAL CONTRACTORS OF AMERICA,
SAN DIEGO CHAPTER, INC.
APPRENTICESHIP AND TRAINING TRUST FUND

## AT-WILL EMPLOYMENT AND ARBITRATION AGREEMENT

This Agreement is made by and between Associated General Contractors of America, San Diego Chapter, Inc. Apprenticeship and Training Trust Fund ("Trust Fund"), and Sohil Karimy ("Employee").

In consideration of the mutual promises stated in this Agreement, the Trust Fund and the Employee agree as follows:

### Section 1

The Trust Fund agrees to employ Employee initially in the following job classification: Director of Operations and Education. Employee will receive compensation at the initial rate of $76,000 per year. It is agreed and understood that future changes in the Employee's job classification and/or compensation will not revise or modify this Agreement in any way. This Agreement will remain in effect throughout the period of the Employee's employment by the Trust Fund.

### Section 2

Employee's employment with the Trust Fund has been and is at-will. Employee may quit employment for any reason or no reason, with or without notice, and the Trust Fund may terminate Employee's employment at any time, for any reason, or for no reason, with or without notice. Employee agrees and understands that no representative of the Trust Fund has any authority to vary the understandings set forth in the previous sentence or to enter into any employment agreement with Employee for a specified period of time except by a written document signed by both the Employee and the Chairman of the Trust Fund.

### Section 3

This Agreement supersedes any and all other agreements, either oral or in writing, between the Trust Fund and the Employee with respect to the subject matter of this Agreement. This Agreement also contains all of the covenants and agreements between the Employee and the Trust Fund with respect to the subject matter of this Agreement. Both the Employee and the Trust Fund acknowledge that no representation, inducement, promise or agreement, oral or otherwise, has been made by any person which is not included in this Agreement. No agreement, statement or promise regarding the subject matter of this Agreement which is not included in this Agreement shall be valid or binding on either the Trust Fund or the Employee.

Section 4

This Agreement contains the entire agreement between the Employee and the Trust Fund with regard to at-will employment and arbitration of termination disputes. There are no oral or collateral agreements of any kind with regard to the subject matter of this Agreement. This Agreement cannot be modified except by a written document signed by the Employee and the Chairman of the Trust Fund.

Section 5

Employee and the Trust Fund agree that in the event Employee's employment is terminated (either by the Trust Fund or the Employee) any dispute that may arise between them relating to such termination of employment (including, without limitation, any claim(s) based on common law, any federal or state statute, Title VII of the Civil Rights Act of 1964, as amended, the California Fair Employment and Housing Act, any statute or provision relating to employment discrimination and/or employment rights, the federal or any state constitution and/or any public policy) will be determined by arbitration and not by a lawsuit or resort to court process. Any contractual dispute relating to termination of employment, including claims based on breach of the at-will employment and arbitration agreement, any express or implied agreement and/or any covenant of good faith and fair dealing, must be properly initiated within one hundred eighty (180) days of termination of employment. Any dispute based on any federal or state statute, Title VII of the Civil Rights Act of 1964, as amended, the California Fair Employment and Housing Act, any statue or provision relating to employment discrimination or employment rights, the federal or any statute constitution and/or any public policy must be properly initiated within one (1) year of termination of employment. The Trust Fund and Employee agree that the time set forth for initiating arbitration of claims (180 days and 1 year) are important to avoid the loss of evidence and fading memories. In addition, the prompt assertion of claims gives both parties an opportunity to take any appropriate corrective action. Such arbitration shall be the exclusive forum for any dispute between Employee and the Trust Fund related to such termination of employment. The arbitration of issues relating to the termination of Employee's employment will be submitted pursuant to the Trust Fund's employment arbitration rules and procedures which are in effect on the date of termination. The employment arbitration rules and procedures are available from the Trust Fund on request, and are incorporated by reference. It is agreed that the arbitrator's decision will be final and binding on the Employee and the Trust Fund. This arbitration provision does not alter the at-will status of the Employee's employment.

Section 6

**NOTICE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE CONCERNING THE TERMINATION OF YOUR EMPLOYMENT DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL.**

Exhibit " E ", Page 10

Section 7

This Agreement shall be binding upon and pass to the benefit of the successor and assigns of Employee and the Trust Fund. Waiver of any breach of this Agreement by the Trust Fund will not constitute a waiver of subsequent similar or dissimilar breaches of this Agreement, or a waiver of any of the obligations contained herein. Should any provision or part of a provision of this Agreement be found as a matter of law to be invalid, such finding shall not have the effect of invalidating the remainder of this Agreement and the provision or part thereof as to which such finding of invalidity is made shall be interpreted so as to be ineffective only to the extent of such invalidity without invalidating the remainder of such provision or part thereof or any of the other provisions of this Agreement.

EMPLOYEE

ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO CHAPTER, INC. APPRENTICESHIP AND TRAINING TRUST FUND

_____
Sohil Karimy

Dated: ___6/28/06___

_____
Thomas L. Brown, Chairman

Dated: _____

3

Exhibit " F ", Page 11

**EXHIBIT G**



**Procopio**

Procopio, Cory, Hargreaves & Savitch LLP

**David P. Wolds**
Direct Dial: (619) 525-3875
E-mail: dpw@procopio.com
Personal Fax: (619) 398-0175

September 27, 2007

**VIA EMAIL**

Sohil Karimy
13099 Via Suena
Valley Center, CA 92082

     Re:    <u>Associated General Contractors of America – San Diego Chapter, Inc.
           Apprenticeship and Training Trust Fund: Return of Trust Property</u>

       This office represents the Associated General Contractors of America, San Diego Chapter, Inc. Apprenticeship and Training Trust Fund. Your employment with the Trust terminated on September 17, 2007.

       By letters dated September 17 and 20, Pete Saucedo requested the return of specified Trust property which has not been returned. We are advised that you possess a laptop, wireless card, and backup electronic storage devices containing Trust confidential and proprietary information. Please consider this letter a further demand that you return the listed property and all other Trust files, electronic or hardcopies of Trust documents, and Trust property, including without limitation, information related to apprentices, contractors, and Trust employees, instructors and vendors.

       We respectfully remind you of your continuing obligations to the Trust under the California Trade Secrets Act and your Confidentiality Agreement, a copy of which is enclosed for your immediate reference.

       Please contact me at (619) 525-3875 by 5:00 p.m. on Monday, October 1, 2007, to arrange for a convenient time and place for a courier to pick up the Trust's property in your possession. The property must be made available for pick-up no later than 5:00 p.m. on Wednesday, October 3, 2007. Failure to return the Trust's property will result in further action.

       In the future, please direct all communications regarding your employment and return of the Trust's property to me. Thank you for your anticipated cooperation.

Yours truly,

David P. Wolds

DPW/alr
Enclosure

*Exhibit " G ", Page 12*

530 B Street, Suite 2100 · San Diego, CA 92101-4469 · T. 619.238.1900  F. 619.235.0398

www.procopio.com

112893.000000/747223.02